OF THE

## STATE OF IOWA

AT

## DES MOINES, SEPTEMBER TERM, 1907

AND IN THE SIXTY-FIRST YEAR OF THE STATE

---

CHRISTINA CHRISTOPHERSON, ADMINISTRATRIX, Appellant,
v. CHICAGO, MILWAUKEE & ST. PAUL R. R. Co.

Railroads: NEGLIGENCE: EVIDENCE. It is the duty of those in
1   charge of a construction train and the work in which em-
ployés are engaged to give a workman, who, in the discharge
of his duty, is upon the track at the rear of the train, some
warning that the train is to be backed toward him, especially
where he has no reason to believe that the same will be run
in his direction.

Evidence held to support a finding of negligence on the part
of defendant.

Same: CONTRIBUTORY NEGLIGENCE. Unless contributory negligence
2   is conclusively shown, in an action for a personal injury, the
presumption arising from the instinct of self-preservation
should be taken into account; and where there are no eye

409

witnesses to the accident it is sufficient, in the first instance, to sustain plaintiff's burden of showing freedom from contributory negligence.

Evidence held to require submission of the issue to the jury.

**Evidence:** RES GESTAE. The test as to the admissibility of declarations of a decedent on the ground of *res gestæ* is whether they were made without premeditation and design, rather than whether they were in point of fact contemporaneous; so that mere lapse of time because of continued unconsciousness will not render the statements incompetent if made immediately upon restored consciousness; nor will the fact that they are in response to an inquiry which is not leading or suggestive affect their admissibility.

*Appeal from Dickinson District Court.*— HON. W. B. QUARTON, Judge.

FRIDAY, DECEMBER 14, 1906.

REHEARING DENIED, TUESDAY, SEPTEMBER 17, 1907.

ACTION by plaintiff, as administratrix of the estate of her deceased husband, Anton Christopherson, to recover damages for injuries causing his death, received while in defendant's employment. At the conclusion of plaintiff's evidence, the court sustained defendant's motion to direct a verdict in its favor, and from judgment on such directed verdict the plaintiff appeals.— *Reversed.*

*J. L. Bascom* and *Francis & Owen,* for appellant.

*J. C. Cook* and *H. Loomis,* for appellee.

McCLAIN, C. J.— The evidence admitted on behalf of the plaintiff tended to show the following facts: The deceased was in defendant's employ as section foreman, at Milford, Iowa. On the day of the accident which resulted in the death of deceased, a construction train, consisting of an engine and tender, a flat car and a caboose, came north on defendant's line to Milford, the engine with tender backing, with the flat

car next south of it attached to the pilot, and the caboose at the south end. There was a crew of sectionmen on the train in charge of the roadmaster, and the object in view was to load some rails which were piled near the track into the flat car, to be transported to another place. The caboose was uncoupled and left standing a short distance south of the pile of rails, and the flat car, still attached to the engine, was stopped with its south end near the north end of the rails, in order that they might be loaded into the car from the south end instead of being thrown over the side. When the loading was about completed, the roadmaster had a conversation with deceased, west of the track and near the north end of the caboose, in which deceased was directed to proceed to a toolhouse situated about four hundred feet to the north and on the east side of the track, for the purpose of securing some bolts for fish plates, to be put on the car with the rails. About the time that deceased started north toward the toolhouse, walking on the west side of the track, the engine was started south, pushing the flat car, in order that it should be coupled to the caboose. The engine pulling the flat car and caboose was then backed northward, and deceased was struck by the north end of the tender, and thrown to the west side of the track, where he was found unconscious, about one hundred and forty feet north of the point from which he started. Deceased was carried to his home in an unconscious state, and died within forty-eight hours as the result of the injuries he had received. The grounds of the motion to direct a verdict were substantially that there was no evidence of negligence on the part of the defendant, nor of the exercise of care on the part of deceased, at the time of the accident. Other items of evidence than those above stated will be noticed in discussing the grounds of the ruling on the motion which the court sustained, directing a verdict.

I. There is no real controversy as to the sufficiency of the evidence to sustain a finding of negligence on the part of defendant's employés in operating the train so as to

strike and injure deceased. According to the testimony of the witnesses, there was no signal given by ringing of bell or blowing of whistle. when the train backed north, after the flat car was coupled to the caboose. The roadmaster, who, so far as the evidence discloses, was in charge of the operations of the train, knew that the deceased was proceeding northward along the track, and must necessarily cross the track north of the moving train in order to reach the toolhouse. So far as appears, there was no one at the north end of the tender keeping any lookout for the safety of deceased or any other person who might be along or upon the track, and the engineer was unable to see along the track to the north on account of the tender. Certainly, under these circumstances, the jury would have been justified in finding that with reference to deceased the defendant's· employés were negligent in not taking some means to warn him of the approaching danger, for at the time he started northward the engine was moving southward toward the caboose, and there is nothing to indicate that deceased had any reason to suppose that after being coupled to the caboose the train would be moved toward the north. Indeed, if the statements of deceased, which will be referred to in the next division of this opinion, can properly be considered, the deceased supposed that, after the coupling was made, the train would proceed further south, and would not be backed up toward him.

1. RAILROADS: negligence: evidence.

Counsel. argue that the roadmaster had charge of the work only, and not of the movement of the train, and that the conductor and engineer would have no knowledge of the fact that deceased was proceeding northward along or beside the track. But there is no evidence whatever as to these matters, and, so far as the testimony for the plaintiff discloses, the roadmaster was in charge of the movements of the train. We cannot take judicial notice of the assumed fact that the roadmaster had no control over the movements of the train, and therefore had no occasion to provide for a

warning to be given to deceased when the train started northward.

It is argued by counsel that a warning by blowing the whistle or ringing the bell would have been of no value, for it would not have advised the deceased of anything which he did not already know.   But certainly it was important that deceased, who had started north along the track while the engine was being moved toward the caboose for the purpose of making a coupling, should be warned when the engine was put in motion toward him after the coupling to the caboose had been made.   It does not appear that he had any information as to how soon the engine might be expected to move after the coupling was effected, and it was the duty of defendant's employés when the engine was put in motion toward him, and so near him as to be reasonably likely to imperil his safety, to give him some warning.   As we view the case, such warning would not have been necessarily futile, nor an act of supererogation.

II.   The more difficult question is to determine whether the evidence of the freedom of deceased from contributory negligence was sufficient to take the case to the jury.   As

2. SAME: contributory negligence.

there were no eyewitnesses of the actual collision with deceased, the presumption arising from the instinct of self-preservation would be sufficient to sustain the burden of proof in the first instance, that deceased was not at fault for the accident.   *Phinney v. Illinois Central R. Co.,* 122 Iowa, 488, 492; *Morbey v. Chicago & N. W. R. Co.,* 116 Iowa, 84, 88; *Bell v. Incorporated Town of Clarion,* 113 Iowa, 126.   It is true that such presumption cannot prevail against evidence which shows that the injured party could not have exercised due care.   *Crawford v. Chicago G. W. R. Co.,* 109 Iowa, 433.   But unless the evidence conclusively shows contributory negligence, the presumption from the instinct of self-preservation should be taken into account; and the jurors, had the case been submitted to them, would have been justified in assum-

ing that deceased was not doing a negligent act when he was injured, if the injury could be accounted for without contributory negligence on his part. Therefore, under the evidence, it would have been proper for the jury to conclude that deceased was not negligent in walking along the track, but that he was crossing over from the west side to the east side of the track as it was necessary to do in order to reach the toolhouse, and, without any notice of the approach of the train, was struck by the tender.

It is argued, however, that the very fact of being struck by the approaching engine, the presence of which on the track with steam up, ready to move, was known to him, conclusively showed that he did not take reasonable care for his own safety. It is undoubtedly true that an employé, as well as any other person about to cross a railroad track on which trains are operated, should be on his lookout to avoid the danger of being struck or run over by a moving train, and that, in the absence of anything excusing such precaution or rendering reasonable precaution unavailing, the mere fact of being so struck or run over will show contributory negligence. But if the deceased had reasonable ground to believe that the train would not be backed to the north, then it would be for the jury to say whether in view of such reasonable ground of belief he was negligent in not looking for the train before attempting to cross the track. He had no other danger to apprehend from a train coming from the south. If, as the evidence tended to show, deceased was instructed by the roadmaster to proceed to the toolhouse for bolts to be put on the train, and with the roadmaster's knowledge, started north along the track to the toolhouse, with the known necessity of crossing the track in order to reach the toolhouse, the engine having at the time commenced to move southward for the purpose of making the coupling to the caboose, we think it was a fair question for the jury to say whether deceased was negligent in assuming that the train would not be moved to the north so as to imperil his

safety, without warning to him.   These facts take the case out of the usual rule requiring one about to cross the track to look and listen for approaching trains.   Deceased was entitled to rely on the operation of the train in a usual and proper manner, in view of the circumstances, known to him to be within the knowledge of the roadmaster in general charge of the operation of the train.   In *Camp v. Chicago G. W. R. Co.,* 124 Iowa, 238, it was held that an employé walking along the track was justified in assuming that no train would approach behind him at more than a lawful rate of speed under a city ordinance; and so in this case we think it reasonable to say that deceased had the right to assume that the train would not be backed upon him without a signal being given when the engine was started, and that in view of this reasonable assumption the jury might have found that deceased was not guilty of contributory negligence.   If it appeared that the roadmaster had assured deceased that the train would not be moved to the north until deceased returned, then certainly deceased would not have been negligent in failing to look out for the approach of the train, and the jury might well have found that such implied assurance was involved in the direction given to deceased by the roadmaster.

Some of the facts assumed in the statement of the evidence were shown only by declarations of the deceased made about three-quarters of an hour after he was found in an unconscious condition beside the track, and it 3. EVIDENCE: *res gestæ.*   is contended by counsel for appellee that evidence of these declarations was improperly received, and that they should be excluded in our consideration of the case.   There is no appeal on the part of defendant, and perhaps there is no necessity at this time for discussing the admissibility of this evidence; but as the question will arise in the event of a new trial, it is not improper that we should express our views on the question, which has been argued by counsel on each side.   The fact that deceased, at

the time he was struck by the train, was going to the tool-house under the direction of the roadmaster for the purpose of getting bolts to put upon the car with the rails, before the train proceeded to carry the rails to their destination, was shown only by the declaration of the deceased himself, and, as we view it, this was a very material fact in the case. The declaration of deceased to which reference is made as testified to by two or three witnesses was substantially as follows, referring to the action of those in charge of the train: " They backed up on me; no bell, no whistle. They had no business to do it;" and then, in answer to a question of the doctor in attendance as to how he was hurt or how the accident happened, he continued by stating that the roadmaster told him to go up to the toolhouse and get some bolts for some fish plates and put them on the car, and he started in that direction to do this, and the next thing that happened he was knocked down. He also stated in the same connection that they were to set the car into the lower, or south, end of the switch, but instead of that they ran ahead and coupled onto the car and then backed over him. The statement that those in charge of the train should not have backed over him was of course a mere conclusion, and the statement that those in charge of the train were going to set it in at the south end of the switch was not admissible to show that the roadmaster had knowledge of any such belief on the part of the deceased. But the statement that the roadmaster directed the deceased to go to the toolhouse and get some bolts was material as showing not only knowledge on the part of the roadmaster that deceased was likely to be put in peril by a movement of the train to the north, but also knowledge on the part of deceased that the entire situation was within the contemplation of the roadmaster. This material fact was stated by the deceased immediately after recovering from unconsciousness due to a hypodermic injection of morphine.

The first thing that he said after being aroused from this

continuous state of unconsciousness following his injury, during which he was moaning and making exclamations indicating pain, was to call for a drink of water, and, immediately following this call, he made the statements above set out.

It is clear that under the general hearsay rule these declarations could not be shown unless they fall within one of the classes of exceptions which are generally grouped together as declarations which constitute a part of the *res gestæ*. To prove such declarations was practically to make the deceased a witness. Under the branch of the hearsay rule permitting declarations by an injured party soon after an accident to be shown, the proper test of their admissibility is whether they relate to the principal transaction and are explanatory of it, and are made under such circumstances of excitement, still continuing, as to show that they are spontaneous and not the result of deliberation or design. These declarations of the deceased are within this branch of the *res gestæ* rule, unless by reason of the interval of time elapsing between the accident and the declaration; but the real test is not whether the declarations are in point of fact contemporaneous, but whether the circumstances exclude premeditation and design. *Hutcheis v. Cedar Rapids & M. C. R. Co.,* 128 Iowa, 279; *Rothrock v. Cedar Rapids,* 128 Iowa, 252; *Sutcliffe v. Traveling Men's Ass'n,* 119 Iowa, 220; *Alsever v. Minneapolis & St. L. R. Co.,* 115 Iowa, 338; *Keyes v. Cedar Rapids,* 107 Iowa, 509, 518; *Fish v. Illinois Central R. Co.,* 96 Iowa, 702; *McMurrin v. Rigby,* 80 Iowa, 322; *State v. Jones,* 64 Iowa, 349; *State v. Murphy,* 16 R. I. 528 (17 Atl. 998); *Travelers' Insurance Co. v. Sheppard,* 85 Ga. 751 (12 S. E. 18); 3 Wigmore, Evidence, section 1745 *et seq.* Within this general rule, the admissibility of the declarations under the circumstances of the particular case is largely within the discretion of the trial judge. The facts and circumstances of no two cases can be precisely alike, and the exact length of time is not mathematically

controlling. *State v. Driscoll,* 72 Iowa, 583; *Kennedy v. Railroad Co.,* 130 N. Y. 656 (29 N. E. 141); *State v. Ah Loi,* 5 Nev. 101; *Leahey v. Railroad Co.,* 97 Mo. 172 (10 S. W. 58, 10 Am. St. Rep. 300); *Vicksburg R. Co. v. O'Brien,* 119 U. S. 99 (7 Sup. Ct. 118, 30 L. Ed. 299). In this case the interval of time is immaterial, in view of the continued unconsciousness of the deceased until the very moment when, on first being restored to consciousness, he proceeded to make the declaration. Nor is the fact that a portion of the declaration was in response to a question by the attending physician of any significance, for the question was in no way leading or suggestive. What is said in *Guild v. Pringle,* 130 Fed. 419 (64 C. C. A. 621) with regard to responses to leading and suggestive questions, is not applicable.

The evidence for the plaintiff would, in our opinion, have sustained a verdict of the jury in her favor, and the trial court erred therefore in directing a verdict for the defendant.— *Reversed.*