STATE OF IOWA, Appellee, .v. GEORGE LEWALLEN, Appellant.

EVIDENCE: Res Gestae—Spontaneity. Declarations explanatory of a
1    transaction are admissible as part of the *res gestae* when they are
     quite assuredly spontaneous, even though they are not contempo-
     raneous with the transaction.

CRIMINAL LAW: Verdict—Unjustifiable Leniency. An accused may
2    not predicate error on undue leniency of the jury, as reflected in
     its verdict.

WITNESSES: Examination—Refreshing Memory. A witness may be
3    permitted to refresh his memory from a truthful record made by
.    him.

*Appeal from Polk District Court.*—W. G. BONNER, Judge.

JUNE 24, 1924.

DEFENDANT was charged with the crime of murder in the first degree. The jury found him guilty of second-degree murder, and he was sentenced to life imprisonment. He appeals.— *Affirmed.*

*Howard & Taylor*, for appellant.

*Ben J. Gibson*, Attorney-general, and *Vernon R. Seeburger*, County Attorney, for appellee.

PRESTON, J.—The indictment charges that defendant shot Delia Dickerson, April 12, 1923, and that she died the same day.

The errors relied upon for reversal are that the court admitted evidence as to the declarations of witnesses who were present at the time of the shooting. The defendant claims that

1. EVIDENCE: *res gestae; spontaneity.* the declarations were not admissible as part of the *res gestae.* The State contends, and the trial court in its discretion held, that the evidence was admissible. It is also assigned as error that the court erred in permitting a witness to refresh his recollection from a record, and that the verdict is not sustained by the evidence.

Witness Walker testified:

"I am city detective; recall the circumstances of the shooting of Delia Dickerson. I heard, on this night, several shots fired, and ran up to Delia Dickerson's apartment. I saw Oscar Jones and Vivian Dickerson up there. I asked them who did the shooting, and they told me; asked them separately. Both of them gave me the same name."

Witness was not asked, and did not state, what name was given.

Oscar Jones says: "I was at Delia Dickerson's apartments at the time she was killed."

"Q. Did the officers talk some to you about what had happened up there? A. All they asked me, who it was. In that conversation, I told them who did the shooting."

Witness did not testify what name he gave.

Witness Vivian Dickerson testified:

"Knew deceased; was at her apartments the night she was killed. While she and I were lying on the bed, I heard a knock on the door leading into the front room, the bedroom. Delia asked, 'Who's there?' The response outside was, 'Lew.' Delia got up to open the door. She opened the door, and I heard a shot immediately thereafter. She whirled, and fell toward me. She was shot three times in the back. Carpenter came there a few minutes after the shooting. Q. Did you tell him who did it? [There was no objection to the question.] A. Yes, sir.

"Mr. Howard: Objected to as improper, conversation occurring at a time that it cannot be shown that the defendant was present."

There was no motion to exclude.

"Mr. Seeburger: It is offered as part of the *res gestae.*

"Court: I think it is part of the *res gestae.* (Overruled. Exception.)

"A.  He asked me what I was doing with the doors open.
* * * Q.  At the time you saw Bill Carpenter at the door, you
told him about the shooting?  A.  I did."

There was no objection to the question, and no motion to
exclude the answer.  The record is:

"Mr. Howard:  I wish to renew the objection, for the reason
that it is not an exclamation, but the question calls for a con-
versation.  The record at this time shows that the third person
started the conversation, and it is not a voluntary statement
or exclamation.

"Court:  Proceed.  (Exception.)

"Q.  Did you tell Bill Carpenter who did the shooting?
A.  I did.

"Mr. Howard:  Same objections.

"Q.  What did you tell him?  A.  I told him Lewallen had
killed Delia and shot Bugeye."

There was no objection to the question, and no objection to
the answer, and no motion to exclude the answer.  The record
is as we have set it out.  The State's additional abstract adds
to the testimony of this witness as follows:

"Q.  How soon after the shooting did Carpenter come
there?  A.  I don't know how soon it was.  Q.  Well, approxi-
mately how soon after the shooting?  A.  A very few minutes.
Q.  Where did you first see him?  A.  In the doorway.  Q.  To
this apartment?  A.  Yes, sir.  Q.  That is when you had the
conversation with him?  A.  Yes, sir."

Witness Wieland said:

"I am a police officer; recall the circumstances of the shoot-
ing of Delia Dickerson.  I went up to her apartments after the
shooting.  I saw Jones, Vivian Dickerson, and Bill Carpenter
up there.  I had a conversation with Vivian Dickerson and Oscar
Jones; I asked him who did the shooting.  Q.  Did he tell you?
A.  He told us it was George Lewallen.

"Mr. Howard:  We move that the answer be stricken.

"Court:  It may go out."

There was no objection to the question, and no reason is
given for striking it out.

"Following the conversation I had with both Vivian Dickerson and Jones, we went out to George Lewallen's home."

Witness Flook testified:

"I know the defendant. Worked for the Press Taxicab Company; office in the Chamberlain hotel. On the night of April 12, I received a call about 11:15. I then went into the cigar store on the corner. Defendant was standing at the corner of the desk. I made a record of the time of this call. Exhibit H is the detailed report.

"Q. I want to call your attention to the bottom of that page, where a line has been drawn around with a pencil, and ask you to state what is there on that paper. (Objection sustained.) Q. I note in the last line inside of the pencil mark the figures '11:15,' under the caption, 'time started.' Is that your writing? (Objection. Overruled. Exception.) A. Yes, sir. Q. What was that time taken off of,—the time, that is,— what did you look at? (Objection. Overruled. Exception.) A. A little clock on the desk. (Defendant renewed all the objections formerly offered to this testimony, and moved that it be stricken out. Overruled. Exception.)"

1. The foregoing is practically all the evidence contained in the abstract and additional abstract. The evidence is meager. It is contained in five or six pages of the printing. It is apparent that only enough of the record is presented to raise the question. No witness attempts to fix definitely the length of time which had elapsed after the shooting when the declarations were made. It is quite apparent that it was almost immediately. One of the officers heard the shots and ran to the place, and the officers went to the defendant's house, after they had inquired and learned who did the shooting. Deceased had just been shot three times, and had fallen. The declarations were all at the place of the shooting. A number of people came to the scene. The door was still open. The evidence as presented here does not show just when the woman died; the extent of her suffering; whether witnesses were excited or calm. The evidence does not show that witnesses talked with anyone else before the declarations were made. The declarations were not self-serving so as to require closer scrutiny than would be required if they were

such. Neither does the evidence presented here show that any-
one other than defendant was charged with the shooting, and
that witnesses were attempting to shield anyone. There is no
evidence tending to show that they had had time to deliberate
or that they did deliberate before the declarations. These and
other similar circumstances are often important. We do have
this situation shown, however: that a woman was shot near
midnight, and falls. The officers, hearing the shots, run to the
place; and there are the other circumstances before set out as
appearing in the evidence. It is a natural and proper inference,
from the circumstances shown, that there was, at such a time,
excitement, and no opportunity for concocting an untrue story.
The abstract shows that the trial was had September 11th, and
the verdict returned September 16th. Necessarily, much evi-
dence was taken that is not presented here. The trial court
heard all the evidence. The determination of the trial court as
to whether evidence is admissible as a part of the *res gestae* is
a matter resting very largely in the sound judicial discretion of
the trial court. 22 Corpus Juris 449, 460; *State v. Driscoll,* 72
Iowa 583, 585. With the record before us, we are not in a posi-
tion to say that the trial court abused such discretion and erro-
neously admitted the testimony.

2. It is very doubtful whether timely and proper objection
was made to the evidence complained of. Especially is this so as
to the vital part of it, in the evidence wherein defendant was
named. But assuming that it was objected to, we think the evi-
dence was competent. Appellant cites at this point *State v.
Stubbs,* 49 Iowa 203; *State v. Deuble,* 74 Iowa 509; *State v.
Moon,* 167 Iowa 26; *State v. Peirce,* 178 Iowa 417; and cases
from other jurisdictions. An examination of the cases cited,
except, perhaps, the *Deuble* case, shows that they have little or
no application to the question here presented. In the *Stubbs*
case, a witness made a declaration which was held to be hearsay.
It was not claimed to have been a part of the *res gestae.* Such is
the situation in the *Moon* case, where conspiracy was charged,
and one of the conspirators consulted a third person, who was
not a party to the conspiracy. It was held that declarations of
such third party were inadmissible. The opinion in the *Peirce*

case is very long, with twenty-five separate divisions. We do not find that the question of *res gestae* is considered, and it has not been pointed out wherein in the opinion it is claimed that question was in the case. Appellant seems to rely most strongly upon the *Deuble* case, where a woman had been shot, but had had her wound dressed, and had lain down upon a sofa, and then, in response to one seeking information, she related with particularity and at length the circumstances occurring, and conversations between her and defendant, had before the wound was given, stating that defendant was drunk, and had shot her. Under such circumstances, it was held that such declarations were not admissible as part of the *res gestae,* distinguishing the case of *State v. Driscoll,* to be referred to in a moment. As applied to the facts in the instant case, we think the *Deuble* case is not applicable.

The State cites *State v. Schmidt,* 73 Iowa 469; *State v. Driscoll,* 72 Iowa 583. In the *Schmidt* case, the charge was murder by shooting. The court said:

"What length of time had elapsed after Mrs. Peek was shot before the door was opened and the declaration made does not certainly appear; but it could have been but a few moments. Several pistol shots had been fired. * * * A fire had been lighted in the adjoining room, and the danger of being burned existed when the door was opened and the declaration made. It seems to us quite clear that the declaration constitutes a part of the transaction, and was clearly admissible in evidence."

The opinion refers to *Commonwealth v. M'Pike,* 3 Cush. (Mass.) 181, where the deceased ran from a room where defendant was, to a room in the same house, a story above, and knocked at the door, crying "murder." A witness saw that the deceased was wounded, and started for a physician. She met the defendant and another witness on the stairs, and the latter went for a watchman, and upon returning, went immediately to the room where the deceased was, and there found her bleeding profusely. She said the defendant stabbed her. It was held that defendant's objection to the declaration was properly overruled. The case also cites the *Driscoll* case.

The *Driscoll* case was a prosecution for robbery, and certain

declarations of the prosecuting witness were admitted against the defendant. The declarations were made immediately after the robbery, to persons who, with the prosecuting witness, were in search of the robbers. It was held that the declarations were admissible. We have already referred to the circumstances in this case, of the officer's running to the place and going to defendant's house afterwards, evidently in search of the person claimed to have done the killing. In the *Driscoll* case, while the prosecuting witness and the policemen were looking for the robber, the prosecuting witness's face and shirt were bloody, and his vest was open. Prosecuting witness told the policemen he had been robbed by two men in the lumberyard near the railroad track, and that they were two men he had met in the saloon. The court said:

"It will be observed that the length of time which had elapsed between the robbery and the several declarations is not stated. But we think that what may well be designated the pursuit of the robbers immediately followed the robbery, and was a part of that transaction. The prosecuting witness gave immediate outcry, and in the effort to arrest the robbers the declarations were made; and we think, therefore, they are a part of the *res gestae,* and therefore admissible. The declarations were made soon after the robbery, and were explanatory thereof, and of the pursuit then in progress. No two cases are exactly alike, and no general rule can be adopted which is applicable to all cases. To a certain extent, at least, the facts and circumstances of each case must be considered, and in the trial court a legal discretion must be reposed; and we cannot say that such discretion has been abused."

In *Keyes v. City of Cedar Falls,* 107 Iowa 509, 517, plaintiff sustained injuries resulting from a fall into an excavation in one of the streets of the city. Declarations made by him within three minutes thereafter were held admissible, as a part of the *res gestae.* The court said:

"When plaintiff came back to the mill, which was immediately after his fall, he dropped into a chair, and was sitting there, when one Lemmers, an employee at the mill, discovered him. His hat and coat were covered with dirt, and he had a

frightened appearance. Lemmers asked what was the matter, and plaintiff thereupon responded that he had fallen into an excavation and was hurt. Plaintiff, on his examination, was also permitted to testify that, within three minutes from the time the accident occurred, he told Lemmers and a man by the name of Hanson about what had occurred. * * * It may be that plaintiff's evidence as to his having told these persons about his having been hurt was irrelevant and immaterial; but, if so, it was without prejudice, for he did no more than say that he told them. Evidence as to what he said to them was not given by plaintiff. The testimony of Lemmers, if admissible at all, was proper, as part of the *res gestae*. Appellant claims that what plaintiff said was a narrative or statement made after the main transaction was ended, and was therefore inadmissible. It is often difficult to determine when a statement or declaration is a part of the *res gestae*. The rule we have heretofore announced is that, if they are near enough in point of time with the principal transaction to clearly appear to be spontaneous and unpremeditated, and free from sinister motives, and afford a reliable explanation of the principal transaction, they are admissible in evidence [citing cases]. We think the declaration made by plaintiff was so connected in point of time and with the main transaction, and came so spontaneously, that it was admissible as part of the *res gestae*."

The case is somewhat like the instant case in another respect, in that some of the witnesses here were interrogated as to whether they stated who the person was, without naming him; but some of the witnesses did name the defendant. We shall not prolong the opinion by citing cases on the subject, which are very numerous. The subject is very fully covered in 22 Corpus Juris 443.

Two or three additional observations may be permissible. It has been held many times that no hard and fast rule can be laid down as to the admissibility of evidence as a part of the *res gestae*. 22 Corpus Juris 448. There must be a main or principal fact, which may, however, be either the ultimate fact to be proved or some fact evidentiary of that fact. 22 Corpus Juris 449. In the instant case, the identity of the person who

had done the shooting was a relevant and material fact. It is not necessary that the declaration should have been made by one of the participants in the main transaction. If the necessary connection is made, it may be admissible, no matter by whom it was made. 22 Corpus Juris 450, 466. The modern tendency is toward the extension of the rule, and a general recognition of spontaneity as a sufficient substitute for the requirement of contemporaneous connection, and that the act or declaration is not required to be exactly coincident in point of time with the main fact, but may even be separated from it by a considerable length of time, provided it is so immediately and closely connected with the main fact as to be practically inseparable therefrom and serviceable to a clear understanding thereof, the element of time being of importance merely as bearing on the question of spontaneity. 22 Corpus Juris 452, 461, 462. Many instances are given in regard to the elements to be taken into consideration, in 22 Corpus Juris 462 to 467. These have reference to the time which has elapsed; the length of time; whether the time is or is not definitely stated; the place of the act or statement; the condition of the declarant; the influence of intervening occurrences; and the nature and circumstances of the statement, and so on.

The foregoing is the point most strongly urged by appellant for a reversal. The declaration by Vivian Dickerson was by a witness who was present at the time of the shooting, and an eyewitness. She herself testified that the defendant did the shooting, and testifies as a witness to that fact, and to her statement made to the others, who testify to what she said. We think the evidence is so connected as to be admissible as a part of the *res gestae*.

3. It is assigned as error that the verdict is contrary to the evidence. The evidence is not here. The argument is that the verdict is for murder in the second degree, when the evidence clearly shows that it was murder in the first degree; and that this is some proof of the fact that the jury was not satisfied beyond a reasonable doubt of the guilt of the appellant. We think it shows only that the jury were not satisfied of defendant's guilt

2. CRIMINAL LAW: verdict: unjustifiable leniency.

of murder in the first degree. *State v. Van Gorder*, 196 Iowa 782, 793, is cited, where we said:

"The verdict of the jury was for manslaughter. There was no evidence in the record which would justify the jury in saying that the slayer of Geesey was guilty of any lesser crime than murder. We can regard the verdict of manslaughter only as a reflection of the jury's reasonable doubt that the defendant was guilty of the slaying of Geesey."

But we have held many times that defendant is not in a position to complain if the jury was more lenient than the facts justify. *State v. Shaver*, 197 Iowa 1028; *State v. Williams*, 197 Iowa 813; *State v. Dimmitt*, 184 Iowa 870, 872; *State v. Brooks*, 181 Iowa 874; *State v. Shepherd*, 129 Iowa 705; *State v. Ensley*, 10 Iowa 149; *State v. Haugh*, 156 Iowa 639; *State v. Barkley*, 129 Iowa 484; 17 Corpus Juris 361.

4. Finally, it is contended that the court erred in permitting witness Flook to refresh his recollection as to time from the record he made. The witness had already testified, without objection, that he received a call about 11:15, and that he made a record of the time of the call. Appellant cites *State v. Easter*, 185 Iowa 476, where it is held, in effect, that memorandum entries of material facts are admissible whenever it appears that such entries stimulate the memory of the witness, but witness is unable to recall the facts recited therein independently of the entries; or whenever they are insufficient to so stimulate the memory, but the witness knows that, when he made the entries, he possessed the truth concerning them, and made the entries in accordance with such truth. But in that case, a book was offered in evidence, and admitted, over objection, when neither of the witnesses testified to having an independent recollection of any matter stated in the book; neither testified to having made any particular entry in the book; neither testified to any independent recollection of the making of these entries, or that they were true at the time they were made. They testified that they had no personal recollection of where the defendant was at certain dates, but that the book says he went away and returned, and that, according to the book, defendant was at their house on

3. WITNESSES: examination: refreshing memory.

certain dates. The facts in that case are not similar to the show-
ing here made. We think it may be said that it is almost uni-
versally true that, because of the limitations of the human mem-
ory, a witness may testify more certainly to a date or the like
from a writing made by him at the time. It is proper for a
witness to refresh his memory from the writing. There was no
error in permitting witness Flook to do so.

There is no prejudicial error. The judgment is—*Affirmed.*

ARTHUR, C. J., EVANS and VERMILION, JJ., concur.