PHYLLIS MISER, Appellee, v. IOWA STATE TRAVELING MEN'S ASSOCIATION, Appellant.

No. 43803.

MAY 4, 1937.

REHEARING DENIED OCTOBER 1, 1937.

Mills, Hewitt, Diltz & Holliday, for appellant.

Fred Huebner and Stanley G. Swarzman, for appellee.

SAGER, J.—The accident out of which this case grows happened on October 17, 1935, at the intersection of Walnut and Seventh Streets in the city of Des Moines. Dr. Miser, the insured, started south across the intersection on the west line thereof. Having started across the street, a truck driven by one Block, coming south on Seventh street, made a right-hand turn onto Walnut street, in front of Miser. At the same time a car also coming from the north on Seventh street and making a turn in the same way, appeared behind or just to the left of the decedent. It should be noted that Walnut street runs east and west and Seventh street north and south. After Dr. Miser passed the sedan which stopped to permit him to go by, he was confronted by the truck driven by Block, and at this juncture the accident happened. The doctor was seen to grasp his injured wrist, and from thence take a course toward Dr. Smith's office, as will be later outlined. One of appellant's witnesses testified that when Miser was a foot and a half or two feet from the right cab door he raised his arm and struck the glass. At this time this witness was several feet behind the insured, and on the curb waiting to cross in the same direction as Miser had intended to go. Another witness for the appellant

testified that she heard a bystander say, at the sound of the breaking glass in the cab door: " * * * Did you see what that man done? He struck that driver of that car." According to the testimony of Block, the truck driver, he was on the left-hand side of his truck at a distance of from four to five feet from Dr. Miser when the latter, as this witness testified, "struck at the window."

It is appellee's thought that the decedent, finding himself confronted by the truck, became startled or frightened, and, in attempting to protect himself from what he thought was a threatened injury, threw up his hand to protect his face. Appellant takes the position that the decedent intentionally and voluntarily struck the glass in the cab window, and as a consequence sustained the very grievous injury which resulted in his death three days later.

This difference in the contentions of the parties indicates the main subject for consideration in the cause; and the result will be determined by the answer to the question, which theory is in accordance with the facts; or perhaps it is more accurate to say, so far as this appeal is concerned, whether or not the question was one which should have been decided by the court as a matter of law or by the jury as a matter of fact.

■■■ Unless the situation disclosed by the testimony permits of only one conclusion, or, as the cases frequently state it, reasonable men may not differ from the conclusion to be drawn, then the matter was properly one for the jury. The trial court submitted the question on instructions, and in so doing took, we hold, the right course.

Following the injury decedent grabbed his wrist and ran, wending his way in and out of the crowd, eastward one block, then north about two-thirds of a block, at which point he reached the east entrance of the Equitable building. Entering, he ran to the elevator and was taken without stop to the eleventh floor. Leaving the elevator, he ran into and through Dr. Smith's reception room and into the latter's private office, where his wound was dressed preliminary to his being taken to the hospital for further treatment. While making the trip from the place of the accident to Dr. Smith's office blood was streaming from his wrist. He had a horrified look of fear on his face, appeared very nervous, excited and distressed, and in pain. Dr. Smith said that he found him in a degree of shock, cold, pale, very

rapid pulse, and gasping for breath, as he staggered to the table, holding his right hand. Immediately, or shortly after arriving in Dr. Smith's private office, in response to an inquiry as to "what happened," the decedent said: "I was crossing the street and got caught between two cars, and I thought one of them was going to hit me and I threw my hand up to protect my face."

As to whether this statement was properly received by the trial court as a part of the *res gestae* is one of the questions which will have attention herein.

Appellant claims much for the fact that from the time decedent sustained this injury he was in full and complete possession of all his faculties, and was acting calmly and coolly, exercising good judgment in getting to his physician, and in every way indicating that he was not, through any stress of excitement, making any exclamations; that he exercised good judgment within his professional knowledge by grasping the injured member for the purpose of stopping the bleeding, and that he turned and, by the shortest and most direct route possible, started to Dr. Smith's office for attention. This is preliminary to appellant's argument that, having this control of himself in the face of his very serious hurt, his statement made to Dr. Smith was not properly *res gestae*, but, like other statements later made in the doctor's office, was a reasoned and considered declaration in self-interest,—in a word, because the decedent exhibited no panic, his statement made a few minutes after the injury was improperly received by the trial court. Other statements were made, after first-aid treatment and while the doctors were waiting for a taxi to remove the injured man to the hospital. In this later conversation Dr. Miser expressed what seems to us to have been a perfectly natural solicitude as to the nature, extent, and probable permanence of his injury. Contrariwise, this is regarded by the appellant as further evidence that Dr. Miser, hurt as he was, was deliberating as to the possible chance of recovering on the insurance certificate, and, with cold-blooded calculation, was laying his plans to that end.

We do not read the record to any such conclusion. It seems to us to be the most natural thing in the world for a doctor, the tendons of whose wrist have been severed, to be worried and concerned over how far his hurt might impair further activities

in his profession; and that he should at such a time be contriving ways and means of collecting on his insurance policy seems so contrary to common experience that we feel the question was one very properly left to the jury.

The case has been very ably and exhaustively argued by counsel and we have given it the consideration which their labors and the importance of the question deserve. ·

■■■ We direct our attention first to what is perhaps the chief ground of complaint, to wit, the admission of the statement made in Dr. Smith's office. There is no question in the case, as the parties stipulated, other than whether or not the injury sustained by Dr. Miser resulted through accidental means, as required by Article VII of Exhibit B (articles of incorporation of the appellant), which, so far as need here be considered, provides: " * * * and is the holder of Class A certificates or certificates of membership therein and shall, through external, violent and accidental means, receive bodily injuries which shall, independently and exclusively of all other causes result, within ninety days, in the death of the member, his beneficiary shall," receive the benefits provided for, in this case $5,000.

Appellant cites a large number of cases from our own and other jurisdictions as tending to sustain its contention that the statement under examination was not properly received as *res gestae*. No good purpose would be served by analyzing each case in detail, and they are cited only for the purpose of reference. State v. Deuble, 74 Iowa 509, 38 N. W. 383; State v. Lewallen, 198 Iowa 382, 199 N. W. 266; Christopherson v. Railway Co., 135 Iowa 409, at 417, 109 N. W. 1077, 124 Am. St. Rep. 284; Budde v. National T. Ben. Assn., 184 Iowa 1219, at page 1232, 169 N. W. 766; Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N. W. 81; Califore v. Chicago, St. P. M. & O. R. Co., 220 Iowa 676, 263 N. W. 29; Aldine Trust Co. v. National Ben. Acc. Assn., 222 Iowa 20, 268 N. W. 507; Shuman v. Supreme L., K. of H., 110 Iowa 480, at page 483, 81 N. W. 717; Long v. Gary Investment Co., (Iowa) 110 N. W. 26; Pride v. Inter-State B. M. Acc. Assn., 207 Iowa 167, at page 176, 216 N. W. 62, 62 A. L. R. 31; London Guarantee & Accident Co. v. Woelfle (C. C. A.), 83 F. (2d) 325. See, also, 22 Corpus Juris, pp. 458 to 462.

Among these is the Christopherson case, 135 Iowa 409, at page 417, 109 N. W. 1077, 1080, 124 Am. St. Rep. 284, from which appellant quotes as follows, a statement which seems to

support the ruling of the trial court rather than to sustain appellant's contention, to wit:

"These declarations of the deceased are within this branch of the *res gestae* rule, unless by reason of the interval of time elapsing between the accident and the declaration; but the real test is not whether the declarations are in point of fact contemporaneous, but whether the circumstances exclude premeditation and design. [Citing cases.] Within this general rule, the admissibility of the declarations under the circumstances of the particular case is largely within the discretion of the trial judge. The facts and circumstances of no two cases can be precisely alike, and the exact length of time is not mathematically controlling. [Citing cases.]"

We think this quotation fairly expresses our holdings upon this subject.

Appellant concedes that the statement of Dr. Miser was made so soon after the injury that it was not objectionable on that basis, but contends that there was lacking that spontaneity which must appear to give a statement *res gestae* character. As already indicated, appellant argues that this lack of spontaneity is shown by the self-contained way in which Dr. Miser guided his movements to avoid unnecessary loss of blood and to obtain treatment at the earliest possible moment. We have already stated our dissent from this deduction. At any rate, we are not prepared to say that the court was in error in holding that the jury might properly have found against such a theory.

If further authorities be desired in support of our views at this point, they will be found in an exhaustive note to Security, etc., Co. v. Commercial, etc., Co., 147 Or. 193, 32 P. (2d) 582, 93 A. L. R. 409, particularly at pages 414 et seq.

▮▮▮ As a second ground of objection to the admission of this statement appellant says that this statement, being made to Dr. Smith while treating the injured man, was a privileged communication and was not receivable under the provisions of Code section 11263; that as such privileged communication within the meaning of that statute appellee had no right to waive it. On that ground, if on none other, appellant says the court should have excluded it.

Among the provisions of the application signed by Miser in securing this insurance appears the following:

"I HEREBY EXPRESSLY WAIVE any and all provisions of law now existing or that may hereafter exist, preventing any examining or attending physician from disclosing any information acquired while acting in a professional capacity or otherwise, or rendering him incompetent to testify as a witness in any way whatever."

Appellant's theory seems to be that this provision or waiver is operative only when it appears to be to the advantage of the insurer, and has no force if anything might be claimed for it by the beneficiary named in the certificate. We find neither principle nor authority which requires our acceptance of this contention; and we decline to adopt it.

Our views in this regard make it unnecessary that we should analyze the numerous cases cited on the question whether the sole beneficiary in such a situation may or may not waive the statutory privilege.

▐█▌ This brings us to division 3 of appellant's argument, which complains of the giving of instruction No. 4, as follows:

"You are instructed that an accident is an event which, under the circumstances, is unusual and unexpected by the person to whom it happens; the happening of an event without the concurrence of the will of the person by whose agency it was caused.

"You are instructed that by the term 'accidental means' is meant those means, the effect of which does not ordinarily follow and cannot be reasonably anticipated from the use of those means, an effect which the actor did not intend to produce and which he cannot be charged with the design of producing."

A large number of cases is cited and an able and exhaustive analysis of them is made. This complaint is predicated on the claim that there is a distinction "between *accidental results* and *accidental means,* and requires that both be proved in order to meet the provisions of such policy." The argument presented on this question has been found persuasive by a number of courts of last resort, but not by this. In the case before us the argument is especially inconclusive because it is based on an assumption which begs the whole question, to wit, was the contact of Dr. Miser's wrist with the glass in the cab window the result

of a deliberate and purposeful act on his part, or was it the result of an unpremeditated and involuntary effort on his part to protect his face against what he thought threatened injury? Thus the brief of appellant states:

"We insist that the act of the deceased was executed as intended, that there was no slip or mishap which intervened and that the deceased was not ignorant of any material fact which would have caused him to have acted differently."

Be that as it may, the contention thus made has been rejected by this court in Lickleider v. Iowa State Trav. Men's Assn., 184 Iowa 423, 166 N. W. 363, 365, 168 N. W. 884, 3 A. L. R. 1295. Beginning at page 427, Justice Weaver, speaking for the court in language unsurpassed for clarity and precision which ever distinguished this great judge's opinions, said:

"Coming, then, to the question whether there is in this record any testimony tending to show that the death of the insured was the result of injury from accidental cause or means, we confront again the oft-recurring inquiry: What is an accident? and when is a means or cause accidental, within the meaning of the contract? It is not always easy to define a word, though one of familiar, common, and daily use, in other words or terms which shall at once be so clear, accurate, and comprehensive as to be everywhere and always applicable. Attempts to accomplish such a definition quite as often serve to confuse as to elucidate; and usually, courts can well assume that common speech and common usage are as little susceptible to judicial explanation as an axiom in mathematics is susceptible to improvement by changing its form of expression. One thing, at least, is well settled: the words 'accident' and 'accidental' have never acquired any technical meaning in law, and, when used in an insurance contract, they are to be construed and considered according to the common speech and common usage of people generally. Hundreds of attempts have been made by the courts to define these words in other terms; and while some of them may be regarded as helpful, in so far as they adhere to popular usage, others have served only to confuse the situation, if not, in fact, to grossly mislead. Certain it is that no attempt in this direction is in any respect an improvement upon the definition found in our standard lexicons, and from these,

by way of illustration, we quote from Webster's International Dictionary: '*Accident:* An event which takes place without one's foresight or expectation; an undesigned, sudden, and unexpected event; chance; contingency.' '*Accidental:* Happening by chance or unexpectedly. *Synonyms,*—undesigned; unintentional; unforeseen; unpremeditated.' This is also the meaning given to these words in United States Mut. Acc. Assn. v. Barry, 131 U. S. 100, 9 S. Ct. 755, 33 L. Ed. 60. It is an event from an unknown cause, or an unexpected event from a known cause (Raiford v. Wilmington & Weldon R. Co., 130 N. C. 597, 41 S. E. 806); a thing done or disaster caused without design or intention (Steamboat Blue Wing v. Buckner, 12 B. Mon., 51 Ky. 246, 250); an unusual and unexpected result attending the performance of a usual or necessary act (Providence Life Ins. & Inv. Co. v. Martin, 32 Md. 310). Mr. Cooley, in his very thorough compilation of the cases, says that an event which the actor did not intend to produce is produced by accidental means. 4 Cooley's Briefs on Insurance 3156. The same thought is adopted, though variously expressed, in Joyce on Insurance (1897) Section 2863; Bouvier's Law Dictionary; Kerr on Insurance, p. 380; 2 Bacon on Benefit Societies, Section 482; Richards v. Travelers' Ins. Co., 89 Cal. 170 (26 Pac. 762); Railway O. & E. Acc. Assn. v. Drummond, 56 Neb. 235 (76 N. W. 562). The list could be extended quite indefinitely; but it can hardly be denied that these authorities, cited from courts and writers of the highest standing, make it clear that the meaning of these words in law differs in no essential respect from the meaning attributed to them in popular speech.

"There is, however, another alleged definition which has had a degree of judicial sanction, which ought not to be passed without notice. According to this definition, if correctly interpreted by counsel for the defense, an injury happening to the insured through his own voluntary act is not an accident, nor is his hurt to be attributed to accidental means—a proposition which is wholly at variance with every statement of the true rule, as illustrated in the numerous authorities above cited. It may be, and it is, true that, if the insured does a voluntary act, the natural, usual, and to be expected result of which is to bring injury upon himself, then a death so occurring is not an accident, in any sense of the word, legal or colloquial; and

it is only when thus limited that the rule so stated has any proper application.''

The opinion continues to give an illustration of the distinctions which apply to the rule under discussion.

We adhered to the doctrine of this case in Dawson v. Bankers Life Co., 216 Iowa 586, 591, 247 N. W. 279, 282, where this court, by Kintzinger, Justice, said:

''Such was the earlier rule in Iowa. In the case of Lickleider v. Iowa State Traveling Men's Assn., 184 Iowa 423, 166 N. W. 363, 367, 168 N. W. 884, 3 A. L. R. 1295, the early rule was modified, and it was there held that an *accidental result* and the *accidental means* by which it is caused are somewhat identical, and that proof of the former may be considered as proof of the latter.''

Appellant in effect concedes that in instruction No. 4 the court followed this doctrine, but seeks to persuade us to adopt the rule of other jurisdictions for which it contends. We see no reason for so doing.

The court, in addition to instruction No. 4, gave others which need not be here set out, but which, taken together, correctly submitted, as we hold, the case to the jury, and gave all that the appellant was entitled to ask for by the requested instructions which the court did not give.

Finding no error in the record, and holding that the court was right in the rulings challenged and in submitting the cause for the determination of the jury, the cause is affirmed.— Affirmed.

RICHARDS, C. J., STIGER, DONEGAN, ANDERSON, PARSONS, KINTZINGER, and MITCHELL, JJ., concur.