Mrs. George Page, Appellant, v. City of Osceola et al., Appellees.

No. 45962.

September 29, 1942.

Rehearing Denied January 19, 1943.

G. C. Stuart and A. V. Hass, both of Chariton, for appellant.

O. M. Slaymaker, R. E. Killmar, and D. D. Slaymaker, all of Osceola, for appellees.

MILLER, J.—Claimant is the widow of George Page, deceased employee of the City of Osceola, Iowa. She sought workmen's compensation from such city and the Iowa Mutual Liability Insurance Company, its insurance carrier, asserting that her husband received an injury on or about June 17, 1940, arising out of and in the course of his employment with the city, which resulted in his death July 7, 1940. The answer of the city included a general denial. Hearing was had before Hon. Ralph U. Woodcock, deputy industrial commissioner, sitting as sole arbitrator, which resulted in an award of compensation at the maximum rate of $15 per week for 300 weeks, with statutory funeral and medical allowances. The defendants filed a petition for review which was submitted to Hon. John T. Clarkson, industrial commissioner, and resulted in a decision that claimant had failed to establish that her husband's death resulted from an injury arising out of and in the course of such employment "by the greater weight or preponderance of the competent testimony required by law"; accordingly, the award of the arbitrator was reversed and the claim was dismissed. Claimant appealed to the district court, where the decision of the industrial commissioner was affirmed. Claimant has now appealed to this court.

For us to decide the questions presented by this appeal, it is first necessary to determine whether certain testimony, which claimant undertook to introduce and which the industrial commissioner held was incompetent, should have been received and considered by him. George Page was employed by the city to mow weeds in its streets and alleys. The gist of the claim for compensation herein is that, on June 18, 1940, while engaged in mowing weeds for the city, Page received an injury to his back which produced a carbuncle that led to staphylococcus septicemia and resulted in his death on July 7, 1940. The vital question before us concerns the competency of the testimony that was offered to establish that an injury was received on June 18, 1940, that produced the carbuncle. The commissioner held that the testimony of claimant regarding a conversation in reference to such injury, had with her husband on June 18, 1940, was hearsay and incompetent. Such holding is challenged by this appeal.

Eliminating the objections and rulings whereby she was permitted to answer, subject to the objection that this line of testimony was incompetent, irrelevant, immaterial, hearsay, not part of the res gestae, self-serving, claimant testified as follows:

"He went to work on the morning of June 18th, 1940, about six o'clock and he came home about 4:30. His practice had been to put in from eight to ten hours per day. He came home earlier than usual on June 18th, 1940, and I had a conversation with him upon his arrival at home. * * * I just asked him how come he came home so early that evening. * * * He told me he got a lick in the back and it made him sick. * * * He told me the mower had dropped in a rut and almost thrown him off, the first time that he had ever come as near being thrown off a mower in all the seventeen years he mowed. * * * Q. Did he or not say when that had happened, that incident? * * * A. Just a few minutes before he came home. * * *

"He came in the house and I looked at his back. It was about half past four and just as soon as he got his team tied up, it was about five minutes after he got in the house that I saw his back. It was all bruised and black and blue. It was right on the back just above the hip bones. The bruised area was about two inches up and down and I would judge it was three inches on each side of the back bone. * * * He told me that he was mowing and as he came home, he told me, he says, 'I bruised my back,' and took his overall galluses down, and he says, 'I want you to look at my back.' I did and his back was bruised. * * * He said the mower dropped into a rut and it struck him in the back. * * * when my husband came in the house there was indication of pain. He came in and he was bent over and was very white. * * * On June 18th, my husband was home for lunch from twelve o'clock until one and there was no indication of any pain or anything wrong with him at that time. He made no complaints."

Subject to the ruling that "the history which may be detailed by the doctor will not be considered proof of injury" but taken only for the purpose of evaluating his opinion, Dr. K. R. Brown, the attending physician, testified:

"I was first called to see George Page about six or six thirty in the afternoon of Saturday, June 22nd. * * * Upon examination I found a carbuncle over the base of the spine about four and one-half inches in diameter in a circular area. It was definitely in the early stages. When I examined the area on June 22nd, 1940, it was deep red and swollen and extremely tender. There was evidence of points of localizations where drainage would in time appear, but there were no draining areas at the time I saw him. It was a typical early carbuncle with focal points appearing where drainage would occur. * * * I certainly felt that not only the probable but very likely cause of the carbuncle was the local bruising. The sequence of bruising followed by infection is not at all uncommon in our medical experience. The location of the carbuncle was the area that would be bruised by a seat of the type on which he was sitting, and the time, sequence, was logical for the development of infection in that area as a result of a bruising. * * *

"Q. Doctor, assuming that Mr. Page, on the 18th day of June, 1940, had been injured when the wheels of his mower fell into a rut and that examination a few minutes after the injury disclosed a bruise at the base of the spine approximately two inches in width and six inches in length, and that this area was black and blue at the time of examination shortly after the bruise was received, would that bruise, in your opinion, be the probable cause of the carbuncle and infected area that you discovered when you made your examination on the 22nd day of June? * * * A. Yes. * * * From a medical standpoint the septicemia was unquestionably a complication of the carbuncle."

The testimony of claimant is the only evidence, that her husband received an injury arising out of and in the course of his employment, to support Dr. Brown's conclusion that the death resulted from such an injury. When the industrial commissioner determined that her testimony concerning the conversation had with her husband was hearsay and incompetent, he eliminated testimony that was vital to her case. In holding that the testimony was not competent as a part of the res gestae, the commissioner stated:

" * * * we have nothing of record except hearsay and

self-serving declaration to show or that tends to show that the alleged injury was one that occurred in the course of and arose out of the employment. Claimant testified that her husband made the declaration to her a few minutes after he arrived at his home. What may be regarded as a few minutes is necessarily a conclusion, but according to her testimony it was after he tied his team. We find nothing to show how far her husband traveled after the time that claimant said her husband told her that he hurt his back or in what part of the city he was located at the time that the alleged injury occurred. May we go so far as to infer that the time when the declaration was made brings it within the rule of res gestae? We are not. thus persuaded. * * *

"In the case at bar we may assume that deceased made the declarations to his wife as testified to by her, but on the record that we have before us it is self-evident that the declarations and the asserted occurrence were not contemporaneous or so closely connected to the claimed occurrence as to be regarded as a part thereof. * * * To hold as contended for by claimant in the case at bar, we are required to speculate with reference to the time that intervened between the asserted injury and declaration which under the law we cannot and should not do. Claimant further testified that when she examined her husband's back it was black and blue which indicates that far more than a short time had intervened with the result that to infer that the asserted injury and declaration were substantially contemporaneous is nothing short of conjecture, therefore, we have no competent facts as a basis for an inference. That being true, which must be admitted, there is not sufficient competent evidence for the application of the rule of res gestae. For that reason the tendered testimony now under consideration was purely hearsay, therefore incompetent and the objections thereto should have been sustained."

In affirming the foregoing pronouncement, the district court stated:

"I am quite clear that if I were trying any sort of a civil suit in which this evidence was offered as being part of the res

gestae of the transaction involved in which this man received his injuries, they wouldn't be admitted as being a part of the res gestae evidence. I think the commissioner here correctly solved the problem and excluded the evidence correctly.''

It is our judgment that such rulings of the industrial commissioner and the district court were erroneous and require a reversal herein.

■ This court has stated repeatedly that the admissibility of declarations, as a part of the res gestae, is addressed very largely to the discretion of the trial court. Pride v. Inter-State B. M. Acc. Assn., 207 Iowa 167, 176, 216 N. W. 62, 62 A. L. R. 31; Armil v. Chicago, B. & Q. Ry. Co., 70 Iowa 130, 132, 30 N. W. 42; Clark v. Van Vleck, 135 Iowa 194, 198, 112 N. W. 648. We have been reluctant to interfere with rulings appealed from. We have repeatedly affirmed rulings that admitted such testimony. Sinclair v. McDonald, 229 Iowa 1234, 296 N. W. 362; Miser v. Iowa State Trav. Men's Assn., 223 Iowa 662, 273 N. W. 155; Califore v. Chicago, St. P. M. & O. Ry. Co., 220 Iowa 676, 263 N. W. 29; Farrow v. What Cheer Clay Prod. Co., 198 Iowa 922, 200 N. W. 625; Hinnah v. Seaba, 193 Iowa 1206, 188 N. W. 909; Stukas v. Warfield-Pratt-Howell Co., 188 Iowa 878, 175 N. W. 81; Peterson v. Phillips Coal Co., 175 Iowa 223, 157 N. W. 194; Vernon v. Iowa State Trav. Men's Assn., 158 Iowa 597, 138 N. W. 696; Christopherson v. Chicago, M. & St. P. R. R. Co., 135 Iowa 409, 109 N. W. 1077, 124 Am. St. Rep. 284. We have also affirmed rulings which rejected such testimony. Pride v. Inter-State B. M. Acc. Assn., supra; Armil v. Chicago, B. & Q. Ry. Co., supra; Clark v. Van Vleck, supra; Westcott v. Waterloo, C. F. & N. Ry. Co., 173 Iowa 355, 155 N. W. 255.

In McQueen v. Safeway Stores, 214 Iowa 1300, 244 N. W. 278, we reversed a ruling that admitted testimony of a declaration as a part of the res gestae. In Rothrock v. City of Cedar Rapids, 128 Iowa 252, 103 N. W. 475, and Aldine Trust Co. v. National Ben. Acc. Assn., 222 Iowa 20, 268 N. W. 507, we reversed rulings that rejected testimony offered to prove declarations asserted to be part of the res gestae. In all of the cases we reiterate that there is and can be no hard-and-fast rule and

that each case must of necessity be determined largely from its own peculiar facts.

In Rothrock v. City of Cedar Rapids, supra, we state at page 254 of 128 Iowa, page 476 of 103 N. W., as follows:

"In our opinion, the declarations of deceased, made within a half hour after she received the injury from which she was suffering at the time the declarations were made, might be proven, as a part of the res gestae of the injury from which deceased was suffering, as explanatory of her then condition, and connecting such condition with the injury which had caused it. The declarations were made so soon after and under such circumstances that they clearly appeared to be spontaneous and unpremeditated."

In Aldine Trust Co. v. National Ben. Acc. Assn., supra, the facts are stated, at page 22 of 222 Iowa, page 508 of 268 N. W., as follows:

"While on the return trip on the steamer 'Baltic' the doctor and his wife took breakfast together September 11th, and left the dining room about ten a. m., he going toward the deck and she to their stateroom, where she remained about a half hour, then she went to the deck, but noticing it was slippery, she went to the salon and read. She did not see the doctor until about twelve o'clock noon, or about two hours after leaving him. She found him lying on the bed, on his back, with pillows under his left side, with his coat off, and looking very white, and his face showed suffering; the whiteness continuing for some time."

The wife, as a witness, was asked, "Q. When you first saw Dr. Skillern in his stateroom about 12 o'clock, or noon of September 11, 1930, what, if anything, did he say to you?" Objection was interposed because "not part of the res gestae, calling for hearsay testimony," and was sustained. Plaintiffs then made the following offer, "Plaintiffs at this time offer to prove by the witness Eliza P. Skillern, if permitted to do so, that about 12 o'clock on September 11, 1930, Mrs. Skillern saw her husband in his stateroom aboard the steamship Baltic; that as soon as she saw him at that time he said to her, 'I slipped and

fell on the deck and have a terrible pain in my left side.' '' Objection was made to the offer as ''not a part of the res gestae'' and was sustained. On appeal the rulings were reversed, this court stating, at page 25 of 222 Iowa, page 510 of 268 N. W., as follows:

''We think under the circumstances of this case, where less than two hours before Dr. Skillern and wife had separated at the dining room, he going toward the deck, and she, in about a half hour afterwards, going on to the deck and finding it slippery went to the salon to read. When later she went to her stateroom she found her husband in the condition described, and the statements made to her at that time are admissible, as a part of the explanation why he was suffering pain, at least, and as a spontaneous statement explanatory of his condition and what led to it. And that as such it should have been admitted, and for these reasons the court in excluding the statement committed error.''

Without undertaking to review other decisions of this court, above cited, we are disposed to the view and hold that the industrial commissioner and the district court were in error in holding that the claimant's testimony above quoted was incompetent as hearsay. We hold that the declarations of her deceased husband were made so soon after the injury was received and under such circumstances as to be spontaneous and unpremeditated, in explanation of the disability and physical condition then existing, so as to constitute a part of the res gestae. We deem it unnecessary to determine what discretion was imposed upon the industrial commissioner or the district court. We hold that whatever discretion either may have had in the premises was abused. Accordingly, this cause must be reversed.

Appellees contend that the industrial commissioner made a decision on a disputed question of fact so that such decision is binding upon this court under the provisions of section 1452 of the Code, 1939. Many cases are cited, wherein we have held that the commissioner's findings of fact upon conflicting evidence are binding upon us. It is not necessary to review such decisions because they are not in point.

There was some conflict in the evidence concerning the dates that decedent worked and the dates that he received treatment from Dr. Brown. In reference thereto the commissioner states:

"We have no trouble in understanding how parties could be mistaken with reference to dates which is not important here in the light of what we believe to be the controlling facts in the case at bar."

The only express findings of fact or conclusions of law made by the commissioner are set forth immediately following the statements first quoted by us, supra, as follows:

"We are therefore forced to conclude as a finding of facts and conclusions of law that the declarations thus testified to by claimant are purely hearsay within the meaning of the law and the holding of our court in the cases of DeLong v. Highway Commission, supra, and Califore v. C., St. P., M. & O. R. Company, supra, therefore incompetent.

"Based thereon we hold that claimant has failed to support her asserted claim by the greater weight or preponderance of the competent testimony required by the law. For that reason the award as made by the arbitrator should be and is hereby reversed, cancelled and set aside and claimant's application for compensation be and is hereby dismissed with all costs taxed against claimant except the reporting fee which is taxed against defendants."

We can give to the above pronouncements but one interpretation. The commissioner determined that the one vital and controlling issue was the competency of claimant's testimony regarding the declarations that her husband made to her on the afternoon of his injury. If the testimony was incompetent, the claim was without support in the evidence, and, on the other hand, if the testimony was competent, the award of the deputy commissioner was right. We hold that the findings were erroneous. The commissioner and the district court were wrong. The deputy commissioner's award was right and should have been affirmed.

Accordingly, the cause is reversed and remanded to the district court with instructions to reinstate the award made by the deputy industrial commissioner herein on April 10, 1941, and to enter judgment accordingly.—Reversed and remanded with instructions.

BLISS, GARFIELD, OLIVER, MITCHELL, and STIGER, JJ., concur.