ARMIL, ADM'X, v. THE CHICAGO, BURLINGTON & QUINCY R'Y Co.

1. **Evidence**: PERSONAL INJURY: RES GESTÆ: WHAT IS NOT. Where plaintiff's intestate was run over by one of defendant's locomotives, and injured so that he afterwards died, *held* that what he said to his wife after he had been taken home, between thirty and sixty minutes after the accident, in relation to the cause of his injury, and how it occurred, was not admissible in evidence as a part of the *res gestæ*.

2. ———: STATEMENTS OF AGENT: AUTHORITY MUST BE SHOWN. Before the declarations of an agent can be admitted against his principal, the party offering to prove them must give some evidence tending to show that he had power to act for his principal in relation to the matter in hand.

3. **Cross-examination**: DISCRETION OF TRIAL COURT. The trial court is vested with a discretion in the admission of evidence on cross-examination, and an error committed in the use of such discretion will be disregarded on appeal, unless prejudice is shown.

4 **Railroads**: PERSONAL INJURY TO ONE ON TRACK: NEGLIGENCE OF "HOSTLER": IRRELEVANT QUESTIONS. Plaintiff's intestate was run over by one of defendant's locomotives, while it was in the hands of a "hostler" for cleaning, on one of the streets of Des Moines, over which defendant had a right of way. It was not claimed by plaintiff that defendant was negligent because it moved the engine, but the ground on which the recovery was sought was the negligent manner of moving it, and the inexperience of the person in charge. Upon the issue as thus made, *held*

    (1) That if the engine was properly handled, and the usual signal given when it was moved, and the rate of speed was not too great, then it was immaterial whether the person in charge of the engine was inexperienced or otherwise, and that the court did not err in so instructing the jury.—BECK, J., *dissenting*.

    (2) That it was immaterial whether defendant was or was not a trespasser in using the street as a place for standing engines while not in use; since the moving of the engine, and not its standing on the street, was the proximate cause of the injury.

5. **Instructions**: REPETITION NOT REQUIRED. It is not error to refuse instructions asked when equivalent instructions are contained in the charge of the court.

*Appeal from Polk Circuit Court.*

FRIDAY, OCTOBER 29.

THE plaintiff is the administratrix of the estate of her deceased husband, and seeks in this action to recover dam-

ages sustained, caused by the negligence of the defendant, whereby her husband was injured, by reason of which injury he subsequently died. Trial by jury. Judgment for the defendant, and plaintiff appeals.

*Cole, McVey & Clark*, for appellant.

*Runnells & Walker*, for appellee.

SEEVERS, J.—The defendant's road is constructed along and upon Elm street, in the city of Des Moines, several hundred feet. The petition states that the deceased, for a lawful purpose, started to walk diagonally across the railway track; that he was knocked down by a moving caboose; and that, when the caboose stopped, one of the wheels rested on his hand, which was so injured that it became necessary to amputate a portion of the hand, and in consequence of such injury the plaintiff's husband died. Counsel for the appellant state the grounds of negligence upon which a recovery is asked as follows: "*First.* That the engine and cars causing the injury were placed in the hands of an incompetent person. *Second.* That at the time the accident occurred the defendant was using Elm street as a yard in which to store its said engine and trains, and the train of cars which caused said accident was not at the time in use in the ordinary course of traffic, but that said street, at the time of said accident, was being unlawfully used; that the defendant was a trespasser at the time of the accident; and that said unlawful use was the cause of the accident. *Third.* That the engine and train which caused the accident was moved in the night time, without lights or signals."

I. The plaintiff was a witness in her own behalf, and her counsel asked her the following questions: "You say you saw your husband immediately after he came home, on the evening he was hurt? Yes, sir. What, if anything, did he say at that time with reference to the cause of his injury,—how it

1. EVIDENCE: personal injury: res gestæ: what is not.

occurred?" To this question counsel for the defendant objected, and the objection was sustained. In so ruling, it is said that the court erred, for the reason that the evidence sought to be introduced was a part of the *res gestæ*. It is uncertain at what time the accident occurred, and how long afterwards the supposed declaration was made. Counsel for the plaintiff say that such time could not have exceeded thirty minutes. Probably it was not less, but it might have been more, but could not, we incline to think, have exceeded an hour. It is difficult, if not impossible, to say definitely what constitutes a part of the *res gestæ*. No absolute rule is or can be established in relation thereto. A discretion is and must be reposed in the court, and therefore each case must largely depend upon the circumstances surrounding the transaction or *res gestæ*. If the proposed evidence is merely a narration of a past occurrence, then it cannot be received as proof of the existence of such occurrence. 1 Greenl. Ev., §§ 108–110. The *res gestæ* or transaction was the accident, and how it occurred. It is not essential that the declaration sought to be introduced in evidence was uttered at the identical time the accident occurred, but, if made soon afterwards, and explanatory thereof, it is admissible. *State v. Jones*, 64 Iowa, 349; *Insurance Co. v. Mosley*, 8 Wall., 397. In the former case, the declaration preceded the occurrence, but was made in anticipation of it, and as explanatory of a purpose. In the latter case, the deceased, for a proper purpose, left his house in the nighttime, and immediately upon his returning he stated that he had fallen down stairs, and hurt his head. This evidence was held admissible, by a divided court; and in *People v. Davis*, 56 N. Y., 95 (102), it is said, in relation thereto, that " what may be regarded as a part of the *res gestæ* was certainly carried to its utmost limit by a majority of the court." We are, however, we think, asked to go a step further than that case. In the cited case, the deceased left his bed, and passed out of his house, for a certain purpose; and when he

came back, said that, in accomplishing such purpose, he had fallen down stairs, etc. It seems to us that the declaration may be said to be explanatory of what occurred during his necessary absence; and while it may be difficult to draw a sharp distinction between that case and the one at bar, still we think there is a marked difference. In this case it does not appear when the deceased left home, or that he left there for the accomplishment of an avowed purpose. He did not voluntarily, and of his own accord, return home after the accident, but he was taken home by others; and the declaration sought to be introduced was not made on his own motion, as explanatory of either his absence or the condition he was in. We feel constrained to hold that the evidence sought to be introduced does not constitute a part of the *res gestœ*, and is therefore not admissible. *People v. Davis, supra.*

II. When the plaintiff was on the stand as a witness she was asked: " Did any interview take place between the deceased and the agent of the company after the injury?" The witness answered: " Yes, sir;" and stated that the name of the agent was Manly. Thereupon the plaintiff offered to prove the conversation between Manly and the deceased. Upon objection being made, the proposed evidence was rejected by the court, as we think rightly. We shall assume, as do counsel for the plaintiff, that there was no evidence tending to show the character of the powers and duties of Manly, or the nature of his agency. Before the declarations of an agent are admissible, the party offering to prove them must, at least, give some evidence tending to show that he had the power to act for his principal in relation to the matter in hand, and that the same was within the scope of his authority. *Livingstone v. Iowa Midland R. Co.*, 35 Iowa, 555; *Verry v. Burlington, C. R. & N. R. Co.*, 47 Id., 549.

2. ——: statements of agent: authority must be shown.

III. Thomas Williams, a witness for the plaintiff, testified that he saw the deceased when his hand was " under the

**3. CROSS-EX-AMINATION: discretion of trial court.** engine wheel, and that he helped him home." On cross-examination, the defendant asked the witness: "Was there anything said by any one about his being intoxicated?" This question the abstract shows was "objected to" by plaintiff, but no ground of objection was stated. The objection was overruled. Whether such an objection is entitled to consideration we shall not stop to inquire. It is urged in argument that the question asked was not proper as cross-examination. Possibly this may be so, but it does not follow that the judgment must be reversed. The court is vested with a discretion in this respect, and, unless prejudice is shown, the error, if it be such, will be disregarded. *Neil v. Thorn*, 88 N. Y., 270. It clearly appears, from the whole record before us, that the plaintiff was in no manner prejudiced by the introduction of the evidence at the time this was done.

IV. An ordinance of the city of Des Moines granted to the Des Moines & Knoxville Railroad Company the right of **4. RAIL-ROADS: personal injury to one on track: negligence of "hostler": irrelevant questions.** way over and along Elm street, and authorized said company to "lay down a double or single track, with side tracks, turnouts and switches, on the said Elm street, and to run locomotives and trains of cars over the same, as may be necessary in the operation of its road. The defendant is entitled to enjoy all the rights of the Knoxville Company. There is evidence tending to show that when engines came into Des Moines at night they were permitted to stand on the track, and in the street, until morning, when they were taken out on the road. The engine in question was thus left on the track in the street, and was in charge of a hostler, who had cleaned the ash-pan, and knocked the fire out, and then he backed the engine for a short distance, and, when it stopped, the hand of the deceased was found to be under one of the driving wheels of the engine.

The court instructed the jury that "it is immaterial, therefore, whether the person in charge of the engine was inex-

perienced or otherwise, except as that may go to show whether proper signals were given or not;" and the court declined to submit to the jury the question whether the defendant was a trespasser, and, if it was, the effect such fact would have on the right of the plaintiff to recover.

Counsel for the appellant insist that in both respects above mentioned the court erred. It seems to us that the instruction above set out is clearly correct. If the engine was properly handled, and the usual signals given when it was moved, and the rate of speed was not too great, then it was clearly immaterial whether the person in charge was experienced or not. The most experienced engineer could have done no more than this, conceding that the right to run the engine at the time existed; and that such concession should be made it seems to us is true, because it is not claimed that the defendant was negligent in moving the engine, but the ground upon which the recovery in this respect is based is the negligent manner of moving it, and the inexperience of the person in charge. The instruction above set out is therefore correct, and the refusal of the court to submit the question above to the jury is in principle, we think, not materially different. Counsel insist that the defendant had only a right of way on the street; and that the ordinance does not grant, and that the city had no authority to give, the defendant the right to permit its engines to stand on the track in the street, for the purpose of being cleaned and prepared for the next day's run. Conceding this to be so, the question remains whether the fact that the engine in question was permitted to so stand for said purpose was the proximate cause of the accident.

It is clearly immaterial how many other engines were so permitted to stand, or how often the one in question had so stood on the track prior to the time when the accident occurred. What, then, was the proximate cause of the accident? Clearly, the moving of the engine. If this had not been done, the accident would not have occurred. The engine

might have stood on the track until doomsday, and the plaintiff's hand could not possibly have got under the driving-wheel.

It is claimed, however, that when an act is illegal or mischievous, and thereby another person is damaged, the "disposition of the courts is to make the party liable for consequences following from the illegal act, although they be very remote." Sedg. Dam., marg. p. 88. The cases referred to, and upon which this doctrine is based, are materially different from this. We are also referred to *Guille v. Swan*, 19 Johns., 381. In that case an aeronaut made an ascension in a balloon, which accidently descended into the plaintiff's garden, and a great crowd of persons ran to the balloon, and ·trampled down and destroyed the plaintiff's vegetables; and he was permitted to recover, upon the ground that the aeronaut knew that he could not so control the balloon as to descend when and where he saw proper, and therefore it was immaterial that he descended into the garden· accidentally, and that he should have known that his descent, under the circumstances, would ordinarily and naturally draw a crowd, and therefore he was responsible for damages. We are also referred to *Byrne v. Wilson*, which, after considerable search, we found reported in 15 Ir. Law R., 332; and also *Crowhurst v. Amersham Burial Board*, 4 Exch., 5. This case we were unable to find, but we assume that the point decided is correctly stated by counsel.* These cases, it seems to us, are, in principle, like the "*Squib*" *Case*, and that the controverted question therein was the remoteness of the cause of the accident; that is, whether the first wrong-doer or some other person was liable. There was no question but that some one was liable; and the holding in this class of cases is that the first wrong-doer, or person who first threw the squib, is liable, although some one else may have thrown it at the person injured. We do not think such rule can possibly obtain in this class of cases. The throwing of the

---

* This case is found in 4 L. R., Exch. Div., 5.—REP.

squib was the proximate cause of the accident, and in the case at bar the moving of the engine was such proximate cause; and the fact that the engine stood on the track did not cause the accident, or in fact contribute thereto.

V.	The defendant asked certain instructions in relation to the contributory negligence of the deceased. They were **5. INSTRUC-** refused, upon the ground, we are authorized to **TIONS:** **repetition not** suppose, that equivalent instructions were con- **required.** tained in the charge of the court; and this, we think, is so, and therefore there was no prejudicial error in this respect.

For the reasons above stated, the judgment of the circuit court must be

AFFIRMED.

BECK, J., *dissenting.*—The petition alleges that defendant was negligent in permitting the engine to be in charge of an incompetent person, who was not an engineer, at the time of the accident. The court instructed the jury in the following language: "You observe that the only claim of negligence against the defendant is that the engine or cars was moved without proper warning. It is immaterial, therefore, whether the person in charge was inexperienced or otherwise, except as that may go to show whether proper signals were given or not." It will be observed that an issue involving the negligence of defendant in intrusting the engine to an incompetent person is withdrawn from the jury by the instruction, which incorrectly states the allegation of negligence found in the petition. This, in my judgment, is a most glaring error. Of course, no one can doubt that it is negligence for a railroad corporation to employ and permit a person not an engineer, or sufficiently skilled, to run or handle an engine. But the foregoing opinion holds that " if the engine was properly handled, and the usual signals given when it was moved, and the rate of speed was not too great, then it was clearly immaterial whether the person in charge was inexperienced or not."

It is plain that, in determining whether the engine was properly handled, it is important to know whether the person in charge was sufficiently skilled in his business. It is impossible to discover all things that the person did do, or did not do. If he was skilled, he would be presumed to have done all that should have been done; for he is presumed to have done his duty. If he was not skilled, no such presumption could arise. Therefore, if the accident could have been avoided by proper care, it would be presumed that such care was exercised, if the person was skilled, in the absence of evidence of negligent acts; but, if the person was unskilled, the jury would be authorized to presume that proper care was not exercised. The fact, therefore, whether a skilled man was in charge of the engine was proper for the jury to consider in making up their verdict.

In my opinion, the quotation above presented from the majority opinion is erroneous, in that it is based upon the fact that the engine was properly handled. How are we to know that fact? There was no finding thereof by the jury, and we are surely not permitted to exercise the functions of the jury, and find the fact ourselves. We cannot say that there was no evidence showing want of care by the person in charge of the engine, and, as I have shown, his care cannot be presumed, in view of the fact that he was unskilled in handling the engine.

I am clear in the opinion that the instruction given to the jury, to which I have referred, is erroneous.