ARTHUR W. PARKER, ET AL., Appellants, v. MINNIE LAMBERTZ, ET AL.

**Wills:** UNDUE INFLUENCE: EVIDENCE. Undue influence within the meaning of the law, which is sufficient to set aside the will, must be such as subjects the will of the testator to that of the person exercising such influence and makes the instrument express his purpose rather than that of the testator; and such influence must be connected directly with the execution of the will. Evidence reviewed and held insufficient to establish undue influence or fraud.

**Burden of proof.** The burden of establishing undue influence in the execution of a will is upon the party attacking the instrument.

*Appeal from Montgomery District Court.* — HON. N. W. MACY, Judge.

THURSDAY, JULY 13, 1905.

ACTION at law to set aside the probate of a will, and to have the will held for naught, as having been procured by fraud, duress, and undue influence. At the conclusion of the evidence offered for plaintiffs, the court, on motion, directed a verdict for the defendants, and plaintiffs appeal from a judgment on such directed verdict.— *Affirmed.*

*Richards & Richards, W. E. Mitchell,* and *Jennings & Crose,* for appellants.

*Beeson & Pomeroy* and *Junkin & Pringle,* for appellees.

McCLAIN, J. — The evidence on behalf of plaintiffs tended to show the following facts, which we shall consider without discussing the competency of the evidence or the materiality of the facts which it tended to establish: The testatrix, Sarah Ellen Parker, the mother of Arthur W. Parker and Lelia McBride, who are plaintiffs, and of Minnie Lambertz and Mattie Lykins, who are defendants, resided on a farm in Montgomery county, about five miles from the residence of Arthur W. Parker, who is designated in the record as Dr. Parker, and ten miles from the residence of the Lambertzes. The other daughters were nonresidents of the State. On the 1st of March, 1902, Dr. Parker took his mother from the home of the Lambertzes, where she was temporarily visiting, if we understand the record, to the city of Red Oak, about twelve miles distant, and brought her back on the evening of the same day. After he had gone his mother said that she " never was so proud of her boy in her

life as she was that day — he was so kind to her " — and used other like expressions with reference to him, to which Mrs. Lambertz responded " that he was so good and kind to her so he could get more money out of her." Testatrix remained at the home of the Lambertzes for some time, and, about a week after the occurrence just referred to, she went with her daughter and son-in-law to Red Oak, and there executed the will in controversy, by which she gave $1,000 to her daughter Mattie Lykins, $100 to her daughter Lelia McBride, and the balance of her estate to Minnie Lambertz; appointing F. Lambertz, her son-in-law executor, and exempting him from obligation to give bond. In this will she recites that she leaves nothing to her son, Arthur W. Parker, for the reason that she has advanced to him during her lifetime all that she desired him to have. It appears that some years before she had executed a will providing for the distribution of her estate in equal shares to her children. Her estate consisted at the time of the execution of the last will and at the time of her death of 80 acres of land, of the value of about $6,800. Dr. Parker testified that he had never received any advancement of any kind from his mother. For about a year after the execution of this will, testatrix resided at her own home, but, being seized with a serious illness in June, 1903, at her request she was taken to the home of the Lambertzes, where she died in July. During her last illness she made declarations to a sister who was with her at the Lambertzes, assisting to take care of her, that she regretted the making of the last will, and wished she could restore the former will; saying that misrepresentations had been made to her with reference to the attitude of her son and of Mrs. McBride toward her. Similar statements made by testatrix in April preceding at her own home to the same witness are also testified to. This is substantially all of the facts which seem to have any legitimate bearing on the case, save that a letter was written by Mrs. Lambertz to her sister Mrs. McBride, in which this language is used: " Lelia, I did

get mother to make her will or know how she had made it as I was accused of. There is a good deal of talk." In another letter Mrs. Lambertz said that they had taken her mother " to a lawyer in Red Oak to have her will made, helped her upstairs to the office for that purpose," and that the will " was witnessed by two as good witnesses as there was in Red Oak."

Even if these so-called admissions were competent, the evidence, taken as a whole, is insufficient to make out a case of either fraud or undue influence. Giving to the evidence all the weight which the jury could possibly have accorded to it there is nothing which amounts to more than a suspicion that Mrs. Lambertz may have poisoned the mind of her mother against the brother, and thus brought about the execution of the new will. There is no evidence that the statement inpugning the disinterested kindness of Dr. Parker to his mother was fraudulently made, nor is there any evidence that this statement had any effect in determining the disposition which testatrix made of her property. The sister of testatrix who testified to the conversations and relations of the parties at the Lambertz home was evidently quite zealous in her efforts to make such a showing as would justify the setting aside of the will, and yet she does not detail a single circumstance or remark indicating such undue influence as would justify the interference of the court with the exercise of judgment on the part of testatrix in her will. Testatrix, according to testimony of this witness, regretted the execution of the second will, and feared that she made a mistake; and yet she was entirely away from the influence of the Lambertzes, safe in her own home, within a few miles of her son, and evidently in friendly relations with him, for nearly a year after the execution of the second will, and before she went back to the Lambertzes on the occasion of her last illness, and during this time she made no efforts to revoke the will which, as it is claimed, she so deeply regretted, and which she regarded as having been made under

a mistake. " To be undue, within the meaning of the law, influence must be such as subjects the will of the testator to that of the person exercising such influence, and makes the paper express the purpose of such person, rather than that of the testator himself. It must be equivalent to moral coercion. . . . And such undue influence must be directly connected with the execution of the will, operating at the time it was made." *Perkins v. Perkins,* 116 Iowa, 253.

The burden of proof is on the party seeking to establish the fact of undue influence for the purpose of having a conveyance or a will set aside, and the evidence must show that the influence was such as to overcome the will of the grantee, and to destroy to some extent, at least, his free agency. . . . And it must appear that the undue influence was exercised at the time that the act referred to was done. . . . The mere fact that the disposition made by a parent of his property among his children appears unreasonable or unjust will not alone establish undue influence, and prior declarations of an intention contrary to the subsequent disposition cannot be shown to establish undue influence in respect to the disposition finally made. . . . Even if it appears that the deed or will is executed at the suggestion or request of the grantee or devisee, and is prompted by the influence which such person has acquired by business confidence or the showing of an affectionate regard, this will not prove undue influence, unless the freedom of the will has been in some way impaired or destroyed. *Mallow v. Walker,* 115 Iowa, 238.

We reach the conclusion that there was no evidence on which the question of fraud or undue influence in the execution of this will could properly be submitted to the jury, and the judgment of the trial court is *affirmed.*