IN RE WILL OF TERENCE F. KENNEY.

DELLA O'CONNELL et al., Appellees, v. MARY DEIGHTON, Appellant.

No. 41058.

NOVEMBER 17, 1931.

Jebens & Butenschoen, Carl H. Lambach, and M. F. Donegan, for appellees.

Chamberlin & Chamberlin, Bollinger & Block, and Cook & Balluff, for appellant.

STEVENS, J.—Terence F. Kenney died testate March 14, 1930, survived by his sister Mary Deighton, contestant, and numerous distant relatives. His wife predeceased him a few days over a year. Testator was at the time of his death, and had been for several years, a deputy U. S. Marshal. He was afflicted with diabetes for many years prior to his death, the immediate cause of which was infection from a series of carbuncles. He went to the Hospital in Davenport February 13th and his death occurred a month later.

When his will was offered for probate, exceptions were filed thereto by his sister upon two grounds, viz: that at the time of its execution the testator did not possess testamentary capacity, and that the execution of the instrument was procured by undue influence. The instructions are not included in the abstract, but we assume that the ground of testamentary capacity was alone submitted. In any event, but two major propositions are relied upon by appellant for reversal.

The will was written at the request of the deceased by M. F. Donegan, formerly a district judge of the judicial district.

The estate, consisting of cash, bonds and other securities and real estate, aggregated something over $75,000. After making several specific bequests, the residue of his property he bequeathed to the Union Savings Bank & Trust Co. of Davenport in trust for the use and benefit of contestant. Bequests were

given to the Holy Family Church of Davenport, $300.00 of which sum was to be used for masses. These bequests are followed by a gift of $6000.00 to Sophie Barghold, sister of testator's deceased wife, $4000.00 to the heirs of the deceased sister of his wife, $2000.00 to the heirs of the deceased brother of his wife, $500.00 each to cousins living in Rock Island, $500.00 each to the children of Patrick Kenney, a deceased cousin, and $1000.00 to a cousin residing in Boston, Mass.

It appears from the evidence that testator, when he went to the hospital on February 13th, was suffering considerable pain and discomfort from a very large carbuncle on the back of his neck, the infection from which spread to his right breast. Operations for the relief of the carbuncle and to provide drainage for the pus were performed on February 13th and March 1st. The will was executed February 21st. Considerable testimony tending to show that the testator was irrational at times prior and subsequent to the execution thereof was introduced. A Federal prohibition officer, who sought to do some business with him at the hospital prior to the execution of the will, testified that the business was not consummated for the reason that testator was not mentally capable of doing anything. Statements attributed to the testator during his illness and prior to the execution of the will would seem to indicate that he was at times delirious and at least to some extent irrational. The testimony of the physician who waited upon him, of the attorney who drew the will, of the nurses who attended him in the hospital, of the priests who visited him, and of many others who saw and conversed with him, was to the effect that he was rational and possessed of a sound mind at all times prior to the execution of the will. One of the nurses observed on March 2d, for the first time, that testator appeared to be somewhat incoherent in his speech and irrational. The questions of fact were for the jury. No exceptions were taken to the instructions and we must, therefore, assume that the court correctly stated the law to the jury.

The testator had been a man of great physical strength, and during his term of office as deputy marshal was capable and efficient. He was sixty-three years of age, and evidence tending to show any particular impairment of his mental faculties until about the time he went to the hospital is wanting.

It is urged that the testator did not know the extent of his property nor even the names of those entitled to share in his bounty. He had no children. It is shown that the cousin who resided in Boston was almost a stranger to him; that he seldom came in contact with the other beneficiaries, although they resided either in Davenport or Rock Island. It appears that the testator had little to do with his wife's sister although she also lived in Davenport. He gave as his reason for the bequests to his wife's relatives that he thought she would want him to leave them something; that his wife had helped to save the money.

Contestant, at the solicitation of testator, came from San Francisco to live with him very shortly after his wife's death. He did not pay her for services. She testified that he was very close and that he gave her but ten dollars during the year she lived with and kept house for him.

The testimony of the lawyer who visited the testator at the hospital and secured from him a statement of the disposition he desired to make of his property, tends very strongly to establish testamentary capacity. The testator appears to have possessed some eccentricities and did not know the names of a number of the heirs, the children of cousins then deceased, with whom he desired to share his bounty. This was not because of failing memory or mental impairment but perhaps to indifference and lack of association with them. The attorney testified that the testator expressed a wish that the residue of his property be managed and invested by a trustee and thereby preserved for the use and benefit of contestant. The will was drawn in strict accordance with the wishes of the testator and, on the record before us, we think the verdict of the jury has the support of the greater weight of the evidence. The decisions of this court defining testamentary capacity are too numerous and familiar to require citation.

II. It is further strenuously urged by counsel for appellant that Judge Donegan was incompetent under Section 11257 of the Code to testify to conversations or transactions with the deceased. This contention is based upon a provision in the will which directs:

"The executor and trustee herein named, or their successors, to procure the services of M. F. Donegan of Davenport, Iowa, as

attorney for such executor and trustee in carrying out the provisions of this my Last Will and Testament.''

The point urged by counsel is that this provision of the will gave him such an interest in the estate of the testator as to disqualify him as a witness to testify to the conversations and transactions detailed on the trial. It will be observed that the witness is not named as a beneficiary nor is he given any part or parcel of the estate. If he becomes the attorney for the executor and trustee, the most he can claim is reasonable compensation for his services. The interest to disqualify the witness must be direct, certain and definite. The exact question here presented was before us in In re Estate of Rehard, 163 Iowa 310. In that case the will directed the executor to employ the attorney who drew the will to advise and aid him in the settlement of his estate. We said:

''Objection was made to the competency of Wilkinson as a witness to the will on the ground that he was a party in interest under its provisions. This objection was overruled. We think the ruling was correct. The alleged interest of Wilkinson was indirect and uncertain. It conferred no legal right upon him whatever. The provision was not binding upon the executor nor upon the court in the administration of the estate. The interest which would render a witness incompetent must be of a denfinite and legal nature. Hawkins v. Hawkins, 54 Iowa 443; Quinn v. Shields, 62 Iowa 129; Bates v. Officer, 70 Iowa 343. The interest shown here is remote, indirect, and uncertain. It could doubtless be shown as bearing upon the weight of the testimony of the witness; but his competency was not affected thereby. There is the further consideration that by the provisions of Code, Section 3275, a subscribing witness to a will is prohibited from deriving any benefit therefrom. The apparent purpose of this statute is to save the competency of a witness to a will even at the expense of the benefit which he might otherwise receive thereunder.''

None of the cases cited by appellant from this jurisdiction are in any sense in conflict with what we said in the Rehard case. The rule therein stated is sound, logical and in harmony with the weight of authority in other jurisdictions. In re Gagan's Will, 20 N. Y. Supp. 426; In re Folts' Will, 24 N. Y.

Supp. 1052; In re Palmer's Will, 5 N. Y. Supp. 213; McDonough v. Loughlin, 20 Barb. (N. Y.) 238; Sears v. Dillingham, 12 Mass. 368; In re Tierney's Estate, 114 N. W. (Minn.) 838; In re Bretzman's Will, 135 N. W. (Minn.) 980.

None of the authorities cited in the brief of counsel for appellant are in conflict with our holding in the Rehard case. In view of its direct applicability to the facts of this case, we deem it unnecessary to review in detail the authorities cited by appellee, but see the following: Wormley v. Hamburg, 40 Iowa 22; In re Will of Martin, 166 Iowa 233; Schillinger v. McCann, 6 Me. *364; Thissell v. Schillinger, 71 N. E. (Mass.) 300; Commonwealth v. Walsh's Trustee, 117 S. W. (Ky.) 398; Jones v. Leslie, 112 Pac. (Wash.) 81.

No reversible error appears in the record.—Affirmed.

FAVILLE, C. J., and DE GRAFF, ALBERT and WAGNER, JJ., concur.