T. J. McCOLLISTER, Appellant, v. MARY E. SHOWERS et al., Appellees.

No. 41310.

MAY 9, 1933.

Byington & Rate, for appellant.

Henry Negus and Frank F. Messer, for all appellees except M. U. Adye and Julia and Mary Elizabeth McCollister.

W. J. Jackson, for appellee Mary Elizabeth McCollister.

M. U. Adye and Julia McCollister, pro se.

STEVENS, J.—James McCollister, for sixty-seven years a resident of Johnson county, Iowa, died testate on Christmas day, 1927, at the age of ninety-three. He was survived by a daughter Mary Elizabeth Showers and a son T. J. McCollister, the contestant herein. The original will was executed August 16, 1919. To this document there were added three codicils dated July 14, 1923, December 18, 1923, and March 5, 1926, respectively.

By the terms of his will, the testator left all of his property, consisting of about 900 acres of land and $75,000 of mortgage and other securities, in trust. His daughter Mary E. Showers was originally designated as executor and trustee.

In the third codicil, Charles W. Showers, her son, was added as co-executor and trustee. Both were authorized to serve without bond and without rendering any account of their trust.

Some time after the commencement of this action, both Mary E. and Charles W. Showers resigned their respective offices and Henry Negus was appointed executor with will annexed and trustee of the estate.

The will, in paragraph one, directs that the income from a portion of the home farm be paid in equal shares to the children of Mary E. Showers, until the termination of the trust which shall take place twenty years after the death of Mary E. Showers. The trustees are to pay the income from the remainder of the home farm to Mary E. Showers during her lifetime, she to have posses-

sion thereof. Commencing at her death, the said income shall, for the next twenty years, be paid to her children, share and share alike. Upon the death of Mary E. Showers and the expiration of the trust, the portion of the home farm above described is devised to her children or to the issue of any that may then be deceased.

The will further directs that the contestant, appellant herein, and his wife Julia shall have the right to occupy and to receive all the rents, profits, and income from a certain farm of 284 acres then in possession of contestant, after the death of contestant and his wife, the rents and profits derived from said property to be divided equally as follows: One-fourth to Mary E. McCollister, daughter of contestant, and the remaining three-fourths to the grandchildren of contestant for a period of twenty years after the death of contestant and his wife. At the expiration of said twenty years, the farm is to become the property, in the proportion stated, of the parties named. The will further directs that should testator at the time of his death be seized of other real property than that previously described, it shall be held as a part of the trust, the proceeds to be paid to Mary E. Showers, daughter, for twenty years after his death and then to her children. One hundred dollars per year is bequeathed to a former housekeeper of testator and paragraph seven gives the income from a small trust to a niece Nellie Cox Harding. Mary E. Showers and her children are made beneficiaries of the personal estate which, as stated, is to be held in trust and managed by the trustees for the same period as real estate.

In the first of the codicils to the will paragraph seven which, as stated, devised the income from a certain tract of real estate to Nellie Cox Harding was revoked and a substituted provision made. This substituted provision was revoked by the second codicil and she was left nothing by the will.

The grounds upon which it was originally sought to have the will set aside were want of testamentary capacity and undue influence in the procurement of its execution. The latter ground alone is pressed in this court by contestant.

It is the settled law of this state that undue influence which will justify the setting aside, or the denial, of a will to probate must be such as subjects the will of the testator to that of the person exercising the influence and to make the written instrument

express the purpose of such person rather than that of the testator. Parker v. Lambertz, 128 Iowa 496, 104 N. W. 452; Brackey v. Brackey, 151 Iowa 99, 130 N. W. 370; In re Will of Richardson, 199 Iowa 1320, 202 N. W. 114.

Testator appears from the evidence to have been a successful farmer and business man. Due to some strange form of illness, one of his legs was amputated in 1916. A second operation was had. He appears to have suffered greatly and was unable, thereafter, to get out very much. He was obviously a man of strong character. The claim of contestant is that Mary E. Showers, Fred L. Stevens, a nephew, and other close relatives exercised such influence upon and over the testator, that he was deprived of the free and voluntary use of his faculties.

The evidence tends to show that Mary E. Showers, testator's daughter, was a chronic complainer and that she constantly claimed to her father and others that he did nothing for her but much for contestant. Statements to the effect that the property was all to be hers, that she would see to it that such was the arrangement and other similar claims are shown to have been repeatedly made by her. Whether the subject of making a will was ever discussed by her with the testator is apparently not known, at least no direct testimony to that effect was introduced. It is also shown that for at least thirty years prior to his death the testator often complained to relatives and friends of the complaints of his daughter and, on occasion, said that she would never be satisfied until she got all of his property. Upon one occasion it is claimed that he was seen to be weeping as he recited her unkindness.

Fred L. Stevens, who is a lawyer practicing his profession at Iowa City, appears to have been the confidant and legal advisor of the testator for many years. Charles N. Showers, also admitted to the bar, lived on the home farm in a house close to his grandfather. At the time of the trial, Charles N. Showers had a claim for a large sum pending against the estate for alleged confidential services rendered to the testator. Many notes and mortgages, the property of testator, were taken in the name of Stevens, who wrote the will and each of the codicils. This was, apparently, in pursuance of an understanding with testator. The record is barren of direct evidence tending in any way to connect either Stevens or Charles N. Showers with any attempt to influence the testator in

the execution of the will or codicils. Only Stevens and his stenographer, a witness to the will, were present when the original instrument was executed. Stevens also signed as a witness.

Many of the instances relied upon as circumstances tending to prove undue influence are remote in point of time from the date on which the respective instruments were signed, and none of them referred to the execution of a will. The point urged, however, is that Mary·E., the daughter, admittedly the chief beneficiary of the will, whenever opportunity was afforded therefor, for many years complained to the testator of his unfair treatment of her and of his generosity to the contestant. It is not shown, however, by direct or circumstantial evidence that the will was ever the subject of conversation between the father and daughter. Any inference to this effect must be drawn from remote, and not very persuasive, facts.

There is manifest inequality in the will. It appears, however, that contestant has for forty years occupied the farm of 284 acres already referred to, rent free; that he has in the past had some financial difficulties; that he formerly raised blooded cattle and race horses; that he constructed and, for a time at least, maintained a race track upon the premises. He is the owner of something over 100 acres of land, not, however, very valuable. It is true that direct evidence of undue influence is not necessary. This may be established by circumstantial evidence. In re Will of Busick, 191 Iowa 524, 182 N. W. 815; In re Will of Jahn, 195 Iowa 74, 189 N. W. 974; Haman v. Preston, 186 Iowa 1292, 173 N. W. 894; Monahan v. Roderick, 183 Iowa 1, 166 N. W. 725.

A careful reading and analysis of the record, it seems to us, discloses the absence of a prima facie case. There is ground for suspicion, and the evidence shows, that Mary E. Showers for many years was unkind to, and complained much of, her father. The will itself furnishes some evidence at least that it is not the result of undue influence. It may readily be deduced therefrom that the testator well knew the characteristics of his son and daughter and that the disposition made of his property was in harmony with his own wishes and what he believed to be the best interests of all concerned. It may well be questioned whether one exercising undue influence over the mind of the testator in her own behalf would cause an instrument such as the one before us to be executed.

Inequality alone is not sufficient to justify the denial of a will

to probate or the setting aside thereof, if previously admitted. Reliance is placed by counsel upon certain of the cases cited, supra. The facts in the cases relied upon were close, but there was in each of them some fact or circumstance which went much further than appears from the record of this case. We deem it unnecessary to set out the evidence in detail. The record does not disclose sufficient facts from which an inference of undue influence may be fairly or reasonably drawn. A verdict thereon in favor of contestant would be the result of mere speculation. We are convinced from a careful reading and consideration of the record as a whole that the will, together with the several codicils, speak the will and purpose of the testator and not that of some other person or persons substituted therefor.

II. The court excluded testimony of personal communications between the witness Nellie Cox Harding and testator. The principal error complained of is the striking of the answer to a question propounded to her in which she was asked to state whether, on occasions, she heard Mrs. Showers complain to her father about his treatment of, and what he was doing for, her. The answer stricken was as follows: "I never heard her talk to him in any other way other than in a complaining way of his treatment of her." The objection was not only to the competency of the witness but included the grounds that the answer was the mere opinion or conclusion of the witness. It was clearly such. In view of the testimony previously given by this witness, the ruling of the court, even if erroneous, upon the ground of the competency of the witness, could not have been prejudicial. She had already testified in considerable detail to the conduct of Mrs. Showers and of complaints made by her of her father.

Counsel for appellant made an offer to prove by this witness numerous complaints of Mrs. Showers and of conversations had by her with the testator in which he, in effect, stated that his daughter, whom he referred to as "Minnie", was always finding fault and complaining about his treatment of her. So far as the offer was of specific matters, they had practically all been previously covered by the testimony of this witness. The ruling of the court could, therefore, hardly have been prejudicial to contestant, even if erroneous.

We have already referred to the absence of direct proof of any fact connecting Mrs. Showers, or any of the remaining appellees

114

with the execution of the will or codicils. The instruments bear internal evidence of having been freely and voluntarily dictated. Mrs. Showers is made the chief beneficiary of the will but the entire estate is placed in trust and the trust is to continue for a long period of time. She is not given the title. The circumstances disclosed by the proof are little more persuasive than the direct testimony. We are satisfied that contestant wholly failed to make out a *prima facie* case. It follows that the judgment appealed from must be and it is affirmed.—Affirmed.

KINDIG, C. J., and ALBERT, MITCHELL, ANDERSON, and KINTZINGER, JJ., concur.