IN RE ESTATE OF ANNA WILLESEN, deceased.

EDWIN WILLESEN et al., appellants, v. OUR SAVIOR'S EVANGELICAL LUTHERAN CHURCH of Audubon, Iowa, et al., appellees.

No. 49999.

(Reported in 105 N.W.2d 640)

OCTOBER 18, 1960.

Raun & Franck, of Denison, and George Hurley, of Harlan, for appellants.

Dale D. Levis and L. L. Ryan, both of Audubon, and Fred Louis, of Harlan, for appellees.

PETERSON, J.—This case involves a contest as to the will of Anna Willesen, deceased, who departed this life at age 62 on June 11, 1957. Under her will executed in 1950 she bequeathed 80 acres to Our Savior's Evangelical Lutheran Church of Audubon, Iowa; the proceeds of the sale of 160 acres to be divided one half to Board of Trustees, Audubon County Hospital, Audubon, Iowa, and the other one half equally between her two brothers, Edwin and Charles Willesen; any residue to be equally divided between said four parties.

Edwin and Charles Willesen filed contest. The one ground of contest which was submitted to the jury was whether or not L. K. Madsen, the attorney who prepared the will, had exercised undue influence over decedent. The jury decided in favor of proponents. Contestants have appealed.

Mr. and Mrs. Rasmus Willesen were pioneer residents of Audubon County. They were immigrants from Denmark. Rasmus was a hard working and thrifty farmer. He accumulated 720 acres of Audubon County land. They had five children. Hans and Peter died early in life, leaving as surviving children Edwin and Charles, the contestants herein, and Anna, the decedent. Mrs. Willesen died in 1937 and Rasmus died in 1949. A few years prior to his death Rasmus deeded all his land to his three children; 240 acres to each; reserving a life estate.

Anna always lived at home with her parents. After her mother's death she lived with and cared for her father until his death. An uncle lived with her for about three years after

her father's death. After that she lived alone on her farm until her death.

Several witnesses testified Anna was retarded mentally. She had illnesses at one year of age and at four years of age which affected her normal mental development. She only attended school through the fifth grade. Such witnesses also testified concerning her habits of life. They stated it was difficult for her to read any words containing more than four letters. They said she was very slovenly as to her clothing, and careless as to her bodily cleanliness and eating habits; permitted not only cats and dogs, but also chickens to come into the house regularly; her home was filthy at all times.

There was contradictory testimony as to her mental development and her activities. Several witnesses testified she rented and supervised her farms of 240 acres; was engaged in the raising and selling of many chickens each year and in disposing of eggs and of her crops from her rentals; she purchased what was necessary for her farming operations and for her food. She paid her taxes, made extensive repairs on her property, had a substantial bank account and until 1955 wrote and signed all checks for such operations.

As to the matter of her reading and writing she was 'a regular subscriber to the Audubon County paper and to the Des Moines Register. She made a detailed report each year to C. P. Christensen and L. K. Madsen, income tax men, in her own handwriting, as to the value of all buildings on her farms for the purpose of depreciation credits. She made reports as to all receipts and all deductible expenditures for her income tax reports. Samples of items on her list of expenses for 1950: "Infantile paralysis $5; Audubon Hardware Kitchen Cabinet $28.51."

Many checks were introduced in evidence, written from 1950 to 1953. Her handwriting was very legible, and the letters and words were above average as to their formation. As a sample of what she wrote, several checks were introduced to "Des Moines Register"; several to "South Crawford Rural Electric"; one to "Audubon News Guide"; one to "Conklin Grain & Lumber Co"; and one to "Danish Mtl fire insurance."

Anna Hansen, her cousin, testified she stayed at the Wille-sen home for a month when her Uncle Rasmus was sick, and she saw Anna reading the newspapers. Anna's reports and the checks, acknowledged without conflict to be in her own handwriting, are not consistent with the charge of inability to read only four-letter words.

She became acquainted with Mr. L. K. Madsen, an attorney at Audubon, about 1940. He had formerly lived in Audubon and then left for some years, but returned in 1939 and entered into a partnership with C. P. Christensen in the insurance and real-estate business, and at the same time established himself in the law business. Starting in 1940 the partnership prepared Anna's income tax returns from year to year until her death. During the first thirteen years Mr. Christensen prepared the returns. At that time the partnership was dissolved. Mr. Chris-tensen left the firm and Mr. Madsen prepared the returns for 1953 to 1956 inclusive.

In 1949 after the death of her father, Anna had some legal business in connection with the State Tax Commission by reason of explanation of income between her father during his lifetime, and her income. Mr. Madsen was not attorney for the Rasmus Willesen estate, but she had him represent her in connection with clearing up the income tax question. In 1955 she had further business association with Mr. Madsen in connection with the purchase of a home in Audubon. She thought she wanted to move to town. However, her brother Edwin objected and the transaction was canceled. It was agreed at said time that her brother Edwin would countersign her checks thereafter.

The only other legal business Anna had with Mr. Madsen was that in 1950 she had him prepare the will involved in this litigation. It was prepared on December 20, 1950, and mailed to her on that date, with a letter of which copy was introduced in evidence. On December 22, 1950, having received the will through the mail, Anna came to Audubon to sign it before the witnesses. Mr. Madsen telephoned the First State Bank asking them to admit her, as it was after banking hours. She took the will to the bank and signed it in the presence of Albert A. Kruse, the executive vice-president, and Mrs. Henryette Van

Gorder, the president. Mr. Kruse testified: "I asked Anna if that was her will at the bank and she said it was. If she had said it wasn't there wouldn't be much point in signing it as a witness. To the best of my recollection she said she had read the will."

Rasmus Willesen and his wife had been members of the Lutheran Church in Denmark. It was the custom of the Danish Lutheran Church that after they become members at the time of infant baptism they automatically remained as members during their life, unless voluntarily changing membership by joining some other church. Mr. and Mrs. Willesen did not attend the Lutheran Church in Audubon regularly, but never joined any other church. However, Rasmus contributed and both he and his wife, and one of their two sons that died, were buried from the church.

The children attended a Methodist Sunday school and in later years Anna attended the Methodist Church at Gray, Iowa. Her farm was located about two and one-half miles from the church. In 1953 she joined the Methodist Church at Gray. Throughout the years from the death of her father until her death she contributed regularly to Our Savior's Evangelical Church at Audubon. The minister of the church visited her regularly. Her name was on the annual report of the church as a contributor, which report was printed and mailed to all contributors.

Appellants assign the following alleged errors: 1. Trial court erred in permitting proponents' counsel to ask Attorney Madsen about twenty questions, to which objections were all sustained, and that counsel was guilty of misconduct in pursuing such a course of interrogation. 2. Trial court erred in admitting copy of a letter written by Madsen to Anna Willesen enclosing the will. 3. Trial court erred in not withdrawing from the jury the question of whether or not the testatrix could read or comprehend the will. 4. Trial court erred in not setting aside the verdict of the jury and granting a new trial on grounds that the verdict does not effectuate substantial justice, and is against public policy in that it approved bad legal ethics. 5. Trial court erred in not permitting Elsie Willesen to testify

concerning conversations between her husband, decedent and Madsen in 1955.

When a will is executed according to the formalities required by law it is presumed in the first instance that the testator was acquainted with its provisions. Ross v. Ross, 140 Iowa 51, 117 N.W. 1105; In re Estate of Armstrong, 191 Iowa 1210, 183 N.W. 386; In re Estate of Lewman, 239 Iowa 563, 30 N.W.2d 737; Ipsen v. Ruess, 239 Iowa 1376, 35 N.W.2d 82; In re Estate of Klein, 241 Iowa 1103, 42 N.W.2d 593.

When a contest is filed as to a will on the grounds of fraud, duress or undue influence the burden of proof rests upon the contestant. In re Estate of Heller, 233 Iowa 1356, 1367, 11 N.W.2d 586, 592; In re Estate of Huston, 238 Iowa 297, 299, 27 N.W.2d 26, 28; In re Estate of Klein, 241 Iowa 1103, 42 N.W.2d 593, 598; In re Estate of Hadley, 241 Iowa 1280, 45 N.W.2d 140, 145.

In In re Estate of Heller, supra, this court said: "The burden of proving undue influence, and that it operated upon the mind of the testator at the very time the will was executed and to such an extent that the will was the result thereof and not the voluntary act of the testator, was upon the contestants."

I. Proponents' counsel asked L. K. Madsen, the attorney who prepared the will, and the executor appointed by testatrix under the will, approximately twenty questions as to the preparation of the will; mailing it to Anna; its execution, and its deposit with Madsen for safekeeping.

Contestants' counsel objected to all questions on the basis of the witness not being competent under section 622.4, 1958 Code, all of which objections were sustained by the trial court.

The witness was competent and the objections should have been overruled. Stiles v. Estate of Botkin, 30 Iowa 60; German American Sav. Bk. v. Hanna, 124 Iowa 374, 100 N.W. 57; Mollison v. Rittgers, 140 Iowa 365, 118 N.W. 512, 29 L. R. A., N. S., 1179; West v. Iowa Seventh Day Adventist Assn., 194 Iowa 390, 189 N.W. 765; Buckley v. Ebendorf, 204 Iowa 896, 216 N.W. 20; In re Will of Kenney, 213 Iowa 360, 239 N.W. 44, 78 A. L. R. 1189; In re Estate of Olson, 239 Iowa 1149, 34 N.W.2d 207.

The interest which disqualifies a witness must be present, certain and vested, and not uncertain, remote or contingent. Mollison v. Rittgers, 140 Iowa 365, 118 N.W. 512, 29 L. R. A., N. S., 1179; In re Estate of Schultz, 196 Iowa 125, 194 N.W. 242; In re Will of Kenney, 213 Iowa 360, 239 N.W. 44, 78 A. L. R. 1189; Reichart v. Downs, 226 Iowa 870, 285 N.W. 256; Schmidt v. Schurke, 238 Iowa 121, 25 N.W.2d 876; Gilmer v. Neuenswander, 238 Iowa 502, 28 N.W.2d 43.

Madsen was not a party to the action. It is true testatrix had named him as executor, but in view of the contest he was not appointed nor acting. A special administrator was appointed by the court. The first special administrator resigned and a new special administrator, named Chester Miller, a banker, was appointed and is now in charge of the estate and in possession of the property. Madsen was not a beneficiary under the will. His only possible interest would be the matter of an executor's fee if he is appointed. While he was named in the will, yet circumstances could and can arise which will prevent his appointment by the court. A District Judge would have discretion as to this matter, with which we would not interfere. It can certainly, therefore, be correctly stated that when Madsen testified, he had no *present, certain, nor in any manner vested* interest as to the outcome of this contest.

The ruling of the trial court as to objections to the examination of Madsen was, therefore, in error, but it is without prejudice to proponents, since they prevailed. The ruling of the trial court was not prejudicial to the contestants. The court realized this and did not caution proponents' counsel nor stop them in the method and continuance of the questions. All material facts to be elicited by the questions, if answered, were either shown by the objections filed by contestants or by the testimony of other witnesses. First—the preparation of the will by Madsen was alleged in contestants' objections. Second—the mailing of the letter enclosing the will to Anna on December 20 was established in the evidence by the fact that Anna had the will on December 22 and brought it to Audubon for execution. Third—Madsen telephoned the bank telling them that Anna was coming to sign the will before two of the bankers as wit-

nesses. Henryette Van Gorder, president of the bank, so testified. Fourth—the fact that the will had been returned to Madsen for safekeeping was shown by the allegations in contestants' objections and also by the testimony of other witnesses as to Madsen filing same in the clerk's office after the death of Anna.

The facts in West v. Iowa Seventh Day Adventist Assn., supra, were somewhat similar to the facts in the case at bar. Amanda Smith, 69 years of age, deeded two properties, worth about $2500, to the above church association. She arranged to execute such deeds through Rev. W. F. Meyers and Rev. A. R. Ogden, minister and president of the organization respectively. It was alleged they exerted undue influence over her to secure the deeds.

After she died her two children sued to cancel the deeds. The trial court supported their position; this court reversed. We held there was not sufficient proof as to any undue influence. Objection was made to the testimony of Rev. and Mrs. Meyers and Rev. Ogden, alleging they were incompetent witnesses under section 4604 of the Code (now section 622.4).

The court said at page 401 of 194 Iowa: "Appellees interposed objection to the testimony of Ogden, * * * Meyers, * * * and Mrs. Meyers, * * * on the ground that they were prohibited from testifying by Code section 4604 [now 622.4]. These witnesses were not interested in the defendant corporation, as contemplated by said section, and the objections were not well taken."

II. On December 20, 1950, Mr. L. K. Madsen sent a letter to Anna Willesen. Copy of the letter is Exhibit "24", as follows:

"December 20, 1950

"Miss Anna Willesen
Audubon, Iowa
"Dear Madam:
"I have prepared a form of Will for you which I enclose herewith so that you may have time to look it over.

"I hope that I have worked it out in the way you wanted it, but if not then we can always rewrite it when you come in.

I have provided for the eighty you live on to go to the church; the one hundred sixty acres to be appraised by the court and then sold by the executor and the proceeds to be divided one half to the hospital and the other half to be divided equally between your two brothers. The Will provides that the balance of your estate be divided equally in four parts among the church, the hospital, Charles and Edwin.

"As I stated before, if this is not the way you want it, we will change it when you come in.

"The Will must be signed by you in the presence of two witnesses that are well acquainted with you. In view of the fact that I am named as executor it might be well if you have someone besides me as one of the witnesses.

"Respectfully yours,

"LKM:md
 Enc."

The original letter was not produced. Melba Dudgeon, secretary for Mr. Madsen at the time, testified she wrote the letter. She said she placed the letter on Mr. Madsen's desk together with the will and an addressed envelope. She had no independent recollection of the mailing, but states that the custom in the office was when letters were duly signed and enclosed they were placed in a basket of outgoing mail, and whoever was going to the post office would take the mail and deposit it.

The trial court admitted the copy of the letter. Appellants assigned this ruling of the court as error. It is true that all the technicalities involved in proof of mailing of a letter were not followed. It is our opinion the trial court in its discretion had a right to admit the copy of the letter for two reasons: First—it is shown by other evidence that Anna received the letter. Second—it can reasonably be considered as res gestae.

By other evidence it appears that on December 22 Anna came to town bringing with her the will which had been enclosed with the letter. She went to The First State Bank and signed the will in the presence of two bankers. This is positive proof that the letter and the will were mailed to her.

Writings may become a part of the res gestae and are

admissible in evidence as incidents to and a part of a transaction. 20 Am. Jur., Evidence, section 665; 32 C. J. S., Evidence, section 415; Case v. Case, 212 Iowa 1213, 238 N.W. 85; Page v. City of Osceola, 232 Iowa 1126, 5 N.W.2d 593.

We realize that res gestae usually consists of an oral utterance or exclamation, often made somewhat unconsciously, as a part of the happening of a dramatic incident. However, it has been recognized in the form of a writing which is a part of the transaction itself.

20 Am. Jur., supra, states: "Writings may become a part of the res gestae and admissible in evidence where they are incidents of a transaction and a part thereof." .

32 C. J. S., supra, states: "Although res gestae statements are usually in oral form, a writing may be part of the res gestae of a transaction with which it is closely connected."

In Case v. Case, supra (at page 1217 of 212 Iowa), we said: "Statements or circumstances which are explanatory of the main fact in a case are often admissible in evidence as a part of the res gestae. The term, however, as used in this connection, is general and indefinite, and much latitude must be left to the trial court."

The question is referred to in case of Page v. City of Osceola, supra (at page 1131 of 232 Iowa): "This court has stated repeatedly that the admissibility of declarations, as a part of the res gestae, is addressed very largely to the discretion of the trial court. Pride v. Inter-State B. M. Acc. Assn., 207 Iowa 167, 176, 216 N.W. 62, 62 A. L. R. 31; Armil v. Chicago, B. & Q. Ry. Co., 70 Iowa 130, 132, 30 N.W. 42; Clark v. Van Vleck, 135 Iowa 194, 198, 112 N.W. 648. We have been reluctant to interfere with rulings appealed from. We have repeatedly affirmed rulings that admitted such testimony."

In addition to approving the trial court's ruling, we find nothing prejudicial to contestants in the letter. It is a letter of transmittal of the will such as any attorney would write. It briefly outlines the provisions of the will and properly directs the attention of Anna to the fact that if there are any changes she would like, to come in and have them made. It properly explains to her the manner in which it should be executed.

III. The third assignment of error of appellants is that the court should have withdrawn from the jury the question of whether or not the testatrix could read or comprehend and appreciate the contents of the will.

The purport of this contention evidently is that contestants feel the court should have said to the jury as a matter of law the evidence disclosed that testatrix could not read or comprehend the will. This was the most important question for the jury to decide. There was definite conflict in the evidence as to the question. It was not for the court to resolve the conflict in its instructions. It was a question for the jury to decide, under the court's instructions. We find that the trial court very fairly and rather comprehensively presented the question to the jury in Instructions Nos. 9 and 10.

In Instruction No. 9 the court said: "The evidence introduced in the trial with reference to the condition of her health and mind should only be taken into consideration by you in determining the question of whether or not the will was procured by undue influence, and it is proper evidence to be considered by you in the determination of that question, since a person of weakened mentality might be more susceptible to such influence than one whose mentality was not thus weakened."

In Instruction No. 10 the court stated in part: "In determining whether the instrument in question is the valid will of Anna Willesen, or one procured by the exercise of undue influence, you may take into consideration her age, conditions of body and mind as disclosed by the evidence, whether her mind was impaired, and the extent of its impairment, if you find it was impaired, her past history, her place and manner of living, the manner of the transaction of her business and management of her property, and the extent and character thereof; who her relatives were, the state of feeling between her and her relatives, * * *."

The question of ability to read and write and the question of the retarded mental condition of the testatrix are matters which must be considered as circumstances in connection with the ultimate question of undue influence. In re Estate of

Soderland, 239 Iowa 569, 30 N.W.2d 128; In re Estate of Tels-row, 237 Iowa 672, 22 N.W.2d 792, 796.

The elements we have considered in many cases in connection with the presence of undue influence are: 1. Dominance over testator. 2. Condition of testator's mind as to whether or not he is subject to such dominance. 3. General character of the disposition of his property. 4. Activity of dominant agent in connection with making of the will. In re Estate of Sinift, 233 Iowa 800, 10 N.W.2d 550; In re Estate of Ransom, 244 Iowa 343, 57 N.W.2d 89; Gillette v. Cable, 248 Iowa 7, 79 N.W.2d 195; In re Estate of Burrell, 251 Iowa 185, 100 N.W.2d 177.

As to the question of mental powers of a testator Judge Weaver stated as follows in Perkins v. Perkins, 116 Iowa 253, 259, 90 N.W. 55, 57: "The right of a man to dispose of his property by will as he sees fit is one which the law is slow to deny. No mere weakening of his mental powers—no mere impairment of the faculties—will invalidate a will executed in due form, so long as he retains mind enough to know and comprehend in a general way the natural objects of his bounty, the nature and extent of his estate, and the distribution he wishes to make of it. It is not necessary that he should be competent to make contracts, or to transact business generally." (Citing cases)

We should observe in connection with this assignment of error that contestants did not request an instruction specifically outlining the situation to which they are objecting. Furthermore, they filed no exceptions to Instructions Nos. 9 and 10 where the trial court was giving consideration to the subject matter of the mental condition of testatrix.

IV. Appellants contend the trial court erred in refusing to set aside the verdict and grant a new trial on the ground the verdict does not effectuate substantial justice, and is against public policy in that it approved bad legal ethics.

The doctrine of the trial court granting a new trial if substantial justice has not been effected has been recognized by us under certain conditions. The Woodbury Company v. Dough-

erty & Bryant Co., 161 Iowa 571, 143 N.W. 416; In re Estate of Younggren, 225 Iowa 348, 280 N.W. 556.

In the case at bar the issues were fairly and squarely presented to the jury, by the evidence and the instructions. The trial court was justified in not setting the verdict aside and granting a new trial. We admit there were some peculiar circumstances in the case such as the fact that during the years Mr. Madsen was treasurer of the beneficiary Lutheran Church Anna made very substantial contributions to the church and finally left the church a very substantial bequest under her will. This was especially true in view of the fact that she was a member and regularly attended and became a member of the Methodist Church. On the other hand, her parents had been Lutherans in Denmark and considered themselves affiliated with the defendant Lutheran Church, and were both buried from the church. It was apparently a provision long considered by her because she told her cousin, Anna Hansen, over a year before the will was made, that she was leaving 80 acres to the church and 80 acres to the hospital.

She knew both her brothers were very well established financially and did not need her property. Under her will they did receive a substantial share thereof. The record shows that Edwin was worth approximately $133,000, and Charles was worth approximately $88,000. Under all the circumstances it was not an unreasonable distribution of her worldly goods. The case was ably presented to the court and jury on behalf of both proponents and contestants, and after consideration of all elements the jury upheld the will.

Appellants contend the will was against public policy in that it approved bad legal ethics. This is not an assignment of error upon which we can reasonably base reversal. While there were some peculiar circumstances, as we have suggested, the jury had before it for consideration the part Mr. Madsen played in connection with the preparation of the will. Any "bad ethics" would go to the question of whether or not Mr. Madsen unduly influenced Anna in connection with the provisions of her will. The jury held he did not. This is a question of fact, decided by the jury's verdict.

**1378**

V. Appellants contend the trial court erred in excluding the testimony of Elsie Willesen, wife of Edwin Willesen, one of the contestants, pertaining to a conversation between Mr. Madsen, Anna Willesen and Edwin Willesen. This conversation took place five years after the execution of the will.

In 1955 Anna had decided that she wanted to move to Audubon. She had Mr. Madsen look for a house for her. He found one she liked and she made a deposit on the purchase price of $500. Edwin and Elsie heard about the proposed transaction and went with Anna to Mr. Madsen's office to discuss the matter. The theory on which contestants contend the transaction is material is that Edwin claimed Mr. Madsen was guilty of overreaching in trying to sell Anna the property at more than it was worth. However, there is no competent evidence in the record showing that the property was not worth what Anna proposed to pay for it. At any rate, Edwin objected seriously to her purchase of the house and threatened he would have a guardian appointed for her if she persisted in going through with the transaction. She decided to cancel the offer she had made on the property. Edwin dropped his threat to have a guardian appointed on the basis that thereafter he should countersign her checks.

When Elsie started to testify she stated that she had been present at the conversation and took no part in it. On this basis the court permitted some preliminary questions and answers. However, it soon developed from the fact that she continued to use the pronoun "we" in connection with the conversation that she was a party to the transaction. The court then said:

"In view of the closeness of this transaction and the words, use of the word 'we', I am going to rule that she was a party to that transaction and is an incompetent witness and sustain the objection to this line of questioning for that reason."

Counsel for contestants then made proffer of the evidence they were attempting to elicit from Elsie.

The trial court had a discretion in a situation as presented here with which we would not interfere. While she stated at the beginning that she heard the conversation and took no part, the court was justified when she continuously referred

to the group of four people as "we" in holding that it was apparent she had a part in discussing the transaction. Under such circumstances we sustain the trial court in its ruling. Furthermore, careful consideration of the proffer sustains the conviction that this conversation and transaction occurring five years after the execution of the will had no material bearing upon the ultimate question in the case: undue influence by Mr. Madsen. In order to support such contention it is necessary that the circumstances as to undue influence occur prior to and culminating at the time of the execution of the will. In re Will of Richardson, 199 Iowa 1320, 202 N.W. 114; McCollister v. Showers, 216 Iowa 108, 112, 248 N.W. 363, 365. In McCollister v. Showers, supra, we said: "Many of the instances relied upon as circumstances tending to prove undue influence are remote in point of time from the date on which the respective instruments were signed, and none of them referred to the execution of the will."

The evidence excluded by the ruling of the trial court had no reference to or connection with the execution of the will.

The case is affirmed.—Affirmed.

All JUSTICES concur.